A. L. LOGAN v. W. W. FITZGERALD and others.

*Ejectment—Judge's Charge.*

In ejectment, where a party relies on two independent sources of title, to wit, a thirty years' adverse possession, and a seven years' one with color, it is error in the court to omit to explain the character, nature and extent of the two kinds of possession, so as to enable the jury to determine whether the acts of ownership come up to the requirements of the law.

(*Hardin* v. *Barrett*, 6 Jones, 159; *Rogers* v. *Mabe*, 4 Dev., 180; *Bynum* v. *Thompson*, 3 Ired., 578; *Gudger* v. *Hensley*, 82 N. C., 481, cited and approved.)

EJECTMENT tried at Spring Term, 1882, of BUNCOMBE Superior Court, before *Gilliam, J.*

The plaintiff claimed to be the owner in fee of the land in dispute, and the defendant, Lorena Ramsey, admits the same, except as to a portion embraced within the letters and figures as set out in the opinion of this court, to which portion she alleges title in herself, and claims under a continuous adverse possession under known and visible boundaries for more than forty years, and also under a seven years' adverse possession with color. Upon the case stated in the opinion, the jury found against the plaintiff, and he appealed from the judgment rendered.

*Mr. J. H. Merrimon,* for plaintiff.
*Messrs. H. B. Carter* and *C. A. Moore,* for defendant.

LOGAN *v.* FITZGERALD.

Plaintiff's claim—Beginning at 1, thence to 2, 3, 4, 5, 6, 7, 8, 9, thence to the road and with the road to the beginning.

Defendants' claim—Beginning at A (cucumber tree), thence down a small creek to B, thence to 7, C, D, E, F, G, H, I, J, thence to the beginning.

That part south of line 7—C, is defendants' land, outside of lap.

SMITH, C. J. It is conceded that the deed executed in September, 1833, to Thomas Deaver, under whom the plaintiff claims, covers the territory in dispute, and he has title thereto, unless it has been diverted by long adversary possession in the defendant, Lorena Ramsey, and those whose estate she has acquired.

The answer sets up two sources of title, the one derived under such unbroken possession alone, running back for a period of thirty years, unsupported by deed or other instrument in writing ; the other, under a possession of more than seven years with color of title furnished both by will and deed.

The testimony discloses that previous to his death in 1844, Jacob Ramsey resided on a tract of land of which that in controversy (and represented in the accompanying diagram within the letters and figures, A. B. C., 7, 8, 9, 10, D. E. F. G. H. I. J.) is alleged to constitute part, at a place below the line, 7, 8, C., and that his son Wm. T. Ramsey thereafter continued the occupancy during his life time, and at his death in 1863, devised the same to said Lorena, his surviving wife in fee, describing it in his will as " all that tract and parcel of land on which I now live, known and described as the " Jacob Ramsey Farm," and she has resided thereon since.

In October, 1870, divers persons, with the wives of such of them as were married, united in executing a deed to said Lorena, which in terms conveys a tract of land with distinct and well defined boundaries, embracing that in controversy, as well as the territory south of the line, 7, 8, C., whereon Jacob Ramsey and his successors in estate resided, and pursuing in its runnings westward the irregular line in the diagram from D. to A., at which stood a cucumber tree, as therein represented.

The execution of the deed was proved, as to a part only of those whose signatures and seals are affixed, by the sub-

scribing witness, and registered upon this probate; and its introduction as evidence on account of the alleged insufficient proof was resisted by the plaintiff.

In 1862, the defendant's land was surveyed by one Blacklock, not under the directions of any deed or other written instrument of title, and the line run as laid down in the diagram between D. and the cucumber tree at A., as its northern boundary; and this line is recognized and pursued as such in the subsequent deed of 1870.

It was in evidence that a stable had been built upon the disputed land above and near to the point 8, enclosed and used as such for thirty years, and also that there was a clearing thereon in 1867 of some seven or eight acres (the old Jacob Ramsey clearing) which has since been enlarged to twelve or fifteen acres; that Jacob Ramsey and his successors claimed to own up to the surveyed line, and cut timber upon and over the land at his pleasure; that there were two marked trees along the line from J. to D. previous to the survey, and marks from J. to A. extending two or more poles north of J., but it did not appear that they were directly in the line between those points; there were also marks found along the line from D. to F., but not shown to be in it; that the said Thomas Deaver, when owner of the plaintiff's land, also cut timber south of the line from D. to F., for the use of his mill, but had never caused a survey of his tract to be made; that in 1866 or 1867, an agent of Rollins to whom Deaver had contracted to sell, and did in January, 1868, convey his land, bought from the defendant trees standing south of the line D. E., and about the same time Rollins changed the location of the fence for the purpose of straightening it and lessening the expense of its construction, so that it intersected the surveyed line, deviating about the same distance of ten feet from each extremity and its eastern terminus thus far within the disputed territory; that the former proprietor, Deaver, had proposed to sell a

part of his land, westward from the cucumber, and pointed out a spring to the east, adding that he had supposed the spring to be west from the cucumber, and did not claim land further than to that tree; and that Deaver, when in possession and being asked as to his boundary, said, he owned no land south of the fence between D. and E.

Two issues were submitted to the jury, the first of which only is material, (since the finding for the defendant dispensed with any response to the second—the inquiry into plaintiff's damages) and that is in these words:

"Is the plaintiff the owner of that portion of the land claimed by the defendant in her answer or any part thereof?"

The plaintiff asked the court to direct the jury that there was not sufficient evidence to show a possession by the defendant, and those through whom she made claim for thirty years of the land in dispute, under and up to known and visible boundaries, except as to so much as was occupied and used as the stable lot at the point 8.

In response to the request, the court said to the jury that the plaintiff was owner of the land whose possession was sought to be recovered, unless the defendant could show in herself and her predecessors in estate, an open, continuous, and exclusive possession for thirty years, up to known and visible boundaries under a claim of title, and from such, when proved, the law will presume a grant and perfect the claim; that in case of a lap, the part covered by both deeds would in law be in possession of him who had actual possession of any portion, and if there was no actual possession in either, the possession would follow the title and be in him who had the superior title.

The issue submits the simple inquiry as to the plaintiff's title, permitting it to be antagonized in either of the modes suggested, by proof of an adverse possession for thirty years, unsupported by any written instrument ascertaining its extent and limits, or by such possession continued for seven

consecutive years, under the will of the testator, Wm. T., and the partially proved and registered deed, with its well defined and fixed lines, as affording color of title.

If the issue had been severed, so as to present in separate inquiries the two independent sources of title relied on to defeat the action, an error committed in instructions given upon one, might have been obviated by the finding upon the other, in regard to which no error is assigned.

We are disposed to hold that as the deed executed more than seven years before the beginning of the action, describes the boundaries of the land conveyed with precision, and comprehends all up to the surveyed lines from D to the cucumber tree, an unbroken adverse possession under it would vest the fractional parts of the estate in the defendant, notwithstanding any irregularity in the probate and registration, under the authority of *Hardin* v. *Barrett*, 6 Jones, 159, and for the sufficient reason that a fractional part of the estate, thus passing, would be as effectual a barrier to this action as a full and absolute estate. But as we cannot say from the verdict that the jury did not determine the issue for the defendant upon the other ground of a possession of thirty years, without regard to the will or deed, if the jury were misdirected upon that point, the result must be a new trial.

There seems to have been overlooked, in the general instruction as to the effect of a mere naked possession, two qualifying propositions entering into it.

1. The elimination of the time ending on January 1st, 1870, more than eight years, which under the suspending statute (act 1866, ch. 50), should not have been counted.

2. The substitution of thirty for twenty years, the reduced time required to raise the presumption of a conveyance, when as in the present case the title has passed out of the state and the controversy as to ownership is between its citizens. *Rogers* v. *Mabe*, 4 Dev., 180.

If this were the only objection to the charge, the error would be harmless, since the unbroken possession for the thirty years preceding will admit of a deduction of the whole interval of the suspension of the presumption, and still leave more than the twenty years necessary in raising it.

But a more serious difficulty is presented in the effect allowed to the evidence offered of possession, anterior to the making of the will and the deed. The rule laid down for the guidance of the jury is well established, when there is a paper title describing and defining the extent of the claim, in extending a constructive possession up to those limits, but in the absence of such, the actual possession, not resulting from occasional cutting of timber or other acts which may be but trespasses, interrupting but not divesting the owner's constructive possession, must alone determine its character and extent. The occupation *de facto* is the measure of possession unaccompanied by a conveyance, and it cannot be enlarged by declarations of a claim up to certain boundaries. *Bynum* v. *Thompson*, 3 Ired., 578.

But the possession required to raise the presumption of a conveyance, or to give effect to an instrument as color of title, has been discussed in the case of *Gudger* v. *Hensley*, 82 N. C., 481, and it is unnecessary to pursue the subject further.

We do not discover error in the broad propositions of law, but the misleading defect in the instruction is in the failure to define the possession, to which the law attaches such consequences as a transfer of property from the former owner, to the other presumed therefrom, and not open to rebuttal, so that the jury could see whether the acts of asserted ownership in proof come up to the requirements of the rule. So far as they are reported to us, they seem to fall short, and if they do so appear and are insufficient to raise the presumption, the court should in positive terms as a matter of law so direct the jury.

For the error mentioned the verdict ought to be set aside and a *venire de novo* awarded, and it is so ordered.    Let this be certified.

Error.                                    *Venire de novo.*