JOSEPH B. BATCHELOR and others v. BENJAMIN F. WHITAKER and others.

*Deed—" Heirs "—Partnership—Equity—Executors and Administrators.*

1. The rule that requires the annexing of the word " heirs " to the name of the grantee in order to pass a fee, is firmly established and must be enforced. Here, there are no conveying words to which the word "heirs," contained in the warranty clause, can be transferred.

2. Where a firm, or tenants in common, acquire an estate for the life of the bargainor, one member of the firm or one of the tenants in common may purchase the reversion in fee and hold the same to his sole and separate use, where the facts, as in this case, do not establish an equity in favor of the others.

3. The law in force, at the time of the death of the ancestor, was, that an undevised estate held by a decedent for the life of another, should be personal assets in the hands of the personal representative. Rev. Stat., ch. 46, § 22.

(*Stell* v. *Barham,* 87 N. C., 62, cited and approved).

CIVIL ACTION tried at Spring Term, 1882, of HALIFAX Superior Court, before *Bennett, J.*

The plaintiffs appealed from the judgment of the court below.

BATCHELOR *v.* WHITAKER.

*Mr. E. G. Haywood,* for plaintiffs.
*Mr. R. O. Burton, Jr.,* for defendants.

SMITH, C. J.   On September 23, 1842, John H. Bradley, by deed of that date, conveyed to the defendant, Francis A. Smith, in trust to secure and provide for the payment of certain debts therein specified, four slaves and other personal estate, and also, in the language of the bargainor, "all my right and interest to a tract of land lying near the depot, Enfield, and I, John H. Bradley, do agree to warrant and defend the right and title to the said property, to him the said F. A. Smith, to him and his heirs and assigns, against the claims of myself and all others."

The trustee thereafter and pursuant to the terms of the deed, and before 1845, advertised and sold the property—the slaves and interest in the land being bid off by the partnership firm of Batchelor & Whitaker, constituted of James W. Batchelor and L. H. B. Whitaker, and so entered by the trustee in a small memorandum book in which are contained the names of the purchasers, the price bid, and the property sold.   This book has been lost, and the entry is recalled from the memory of the trustee.   The said firm undertook to discharge the secured debts out of the purchase money due from them, and in consequence no conveyance of title to the land has been made.

James W. Batchelor died in November, 1850, leaving a will in which he appoints the plaintiff, Joseph B. Batchelor, his son, executor; and the surviving partner died in 1865, having also made his will wherein he nominates the defendants, James H. Whitaker and Benjamin F. Whitaker, executors.   The bargainor, Bradley, has also since died.

On June 21, 1858, Joseph B. Batchelor, acting in his capacity as executor, and the said L. H. B. Whitaker entered into an agreement in writing and under their respective hands and seals, in which, after a recital of the partnership relations subsisting under different names between the testator and the survivor, and the large business conducted by them and the difficulty of arriv-

ing at a correct settlement owing to the loose manner in which their books were kept, and in order to an adjustment, covenants are mutually entered into in these words:

"The said Joseph B. Batchelor, having on the 10th of January last paid to John Beavans, one of the creditors of the said firm, the sum of five hundred dollars, and agreeing to pay to James D. Perkins a debt due to him of about one hundred and five dollars, doth agree, release, and discharge the said L. H. B. Whitaker from all claim or liability to him on account of the said firm above named, or from the payment made or agreed to be made for the same. And the said L. H. B. Whitaker, in consideration of the payment heretofore made to the said John Beavans, and herein agreed to be made to the said James D. Perkins, doth hereby agree and bind himself to pay and discharge all other debts still outstanding against the said firm, and to refund and pay to the said Joseph B. Batchelor, as executor aforesaid, any sum which he may hereafter be compelled to pay towards, or on account of the same, and doth hereby release and discharge the said Joseph B. Batchelor, as executor, from all claim or liability on account of the said firm, or any matter arising thereon, and from any liability on account of the payment herein agreed to be made to him. In witness wereof, &c."

The present action is brought by the plaintiffs, alleging themselves and admitted to be the heirs-at-law of James W. Batchelor, against the defendants, who, except the defendants F. C. Whitaker, F. Smith and J. A. Collins, husband of defendant, Mary Collins, are in like manner alleged to be, and are, the heirs-at-law of said L. H. B. Whitaker, and its object is a partition of so much of the land bought at the trustee's sale as lies on the east side of the Wilmington & Weldon Railroad, the portion lying on the west side having been surrendered to one Parker, who claimed to own an equal moiety with the said Bradley; and if necessary, a sale for the purpose of division.

The defendant, Smith, submits to make the title, recognizing

the force of his contract of sale, and has deposited a deed to be delivered accordingly.

The complaint asserts that a fee simple is conveyed in the deed in trust, and if not, was so intended; and that the conveyance of the reversionary estate afterwards, to-wit, on February 1, 1856, by said John H. Bradley to said L. H. B. Whitaker in fee, enures to the benefit of both partners, and converts the estate, if defective in the trustee, into an estate of inheritance for the equal advantage of all the alleged tenants in common. ·

The exceptions taken during the trial, and not presented in the foregoing statement, are to rulings that relate to the character and legal consequences of the possession held by the said L. H. B. Whitaker, and his successors in estate, and whether it is adversary, so as to bar the rights of the plaintiffs who claim to be tenants in common, holding one moiety among them.·

The issues and the jury-responses thereto, to which the exceptions refer, are not important in the view we take of the case, since the result will not be affected by the verdict rendered on them, if favorable to the plaintiffs.

The questions presented in the complaint and the plaintiffs' own showing, to be first decided, are:

1. Does the deed in trust convey an estate of inheritance, or for the life of the trustee? and,

2. If the latter, have the plaintiffs any estate or interest in the land held by the defendants, as tenants in common with them?

The plaintiffs have not submitted an issue as to the alleged mistake in giving form to the deed to the trustee, looking to such reformation of its terms as shall make it conform to the intent of the parties and convey a full estate; and we must therefore consider the case as calling on us· to interpret the instrument, as drawn, and to ascertain and declare its legal operation.

We have so recently had occasion to consider the general subject of conveyances of land, *inter vivos,* defective for the absence or displacement of inheritable words and the application of rules of construction in their aid, as to render necessary only a refer-

ence to the case of *Stell* v. *Barham*, 87 N. C., 62. The rule that requires the annexing of the words "heir" or "heirs" to the name of the grantee in order to pass the fee, though technical, is firmly established in the law and fully recognized in our adjudications, and must be enforced until the law-making power shall choose to dispense with its use in such conveyances.

The present deed, by no reasonable construction, can enlarge the life estate vested in the grantee into an estate of inheritance, and is governed by the ruling in the case cited. We will simply advert to the phraseology found in it in confirmation. 1. There are no interposed conveying words to which the terms "and to his heirs," in the concluding part of the warranty, can be transferred without violence to the manifest intention of the grantor in using them. 2. The words, if transposed, apply alike to the personal estate, where they are not necessary, as to the real estate where they are, to pass a full title.

II. The appellant contends that the conveyance of the reversion in fee, obtained by the surviving partner from Bradley in 1856, enures to the equal benefit of both, as assuring the estate intended to be sold and bought, and correcting the mistake in his former deed to the trustee. If the fact were established to be true, as assumed in the proposition, the result would seem reasonably to follow from their fiduciary relations and mutual duties. If there was an equity to have the trust deed reformed for the benefit of the purchasers at the sale by the trustee, the end would have been attained without invoking the aid of the court, and the consequence the same in either mode of correction. But no such equity is found to exist, and no inquiry made before the jury on the point. If there were no such mutual mistake, and only that interest in the land, sold and represented to be sold, which passed to the trustee under the first deed of Bradley, then the said Whitaker was free to purchase the reversion for himself and retain it for his own use, without being exposed to the claims of the heirs of his deceased associate in business.

III. Assuming a life estate alone to pass to the trustee, and waiving any objection to the parol contract of sale, which he is willing to execute, have the plaintiffs, as heirs-at-law of James W. Batchelor, any such interest or share therein as entitled them to partition, and can they maintain their action for the purpose of having it? We think very clearly they have not, and this will be apparent by reference to the law in force, at the time of the death of the ancestor from whom the plaintiffs claim, disposing of undevised estates held in land by the decedent for the life of another :

"If any person shall die seized of an estate in lands, tenements or hereditaments, for the life of another, and shall not by last will have devised the same, and the said estate shall not have come to the heir or heirs-at-law of the tenant for life by special occupancy, then the said estate shall vest in the executors or administrators of the tenant for life; and if any *cestui que trust* shall die leaving any equitable interest in any estate, real or personal, which shall come to his executors or administrators, every such estate in lands, tenements and hereditaments for the life of another, and every such equitable interest, shall be deemed personal assets in the hands of said executors and administrators for the benefit of the creditors, legatees and distributees." Rev. Stat., ch. 46, § 22.

The surviving partner held the entire life estate for the purpose of meeting, if necessary, the liabilities of the firm that devolved upon him, and only when they were discharged could the proper representative of the deceased partner be entitled to claim a share therein. The partnership matters had not been settled and closed when the covenants for an adjustment and release were entered into by Whitaker and the executor of Batchelor, since subsisting and unsatisfied debts are expressly mentioned and provided for in the instrument. Assuming, however, that the settlement had been effected before the institution of the present suit, and without making any disposition of the interest in the land possessed by the firm, the interest of the

deceased partner, whether legal or equitable, passed to the executor as personal property, and not to his heirs-at-law. They have, and can assert, no title or interest acquired by descent in the life estate, and the executor would be debarred from doing so by his surrender and release, to the living and accountable partner under their mutual covenants with each other.

IV. It may be urged, however, that while no deed has been made previous to the suit by the trustee, it may now be put in a form giving to the life estate an inheritable quality, authorizing the heirs to take as special occupants under the statute, and thus the plaintiffs can maintain the action. But the defendants have an equal right that the conveyance shall be simple and without inheritable words, and neither can have the deed so drawn as that, by a retrospective operation, it can confer a cause of action that did not exist when the suit was brought, or defeat a cause of action that did then exist. It is sufficient to say, as the case stands, there was no right, to sue for the land, vested in the plaintiffs and shown in the facts in proof, when they began their suit, nor since, up to the present time. A simple assignment, such as would pass the personal property and the life estate, would give the absolute property in both to the partner, Whitaker, under the terms of his settlement with the executor: an assignment, with inheritable words annexed of the life estate, might perhaps have the effect of vesting an interest therein in the plaintiffs. As the defendants cannot demand the one, neither can the plaintiffs demand the other, to change the aspect of the case as it was and still continues to be.

It is equally plain that the change in the law (Rev. Code, ch. 38, rule 12), which imparts to estates held for life the same descendible qualities that belong to estates of inheritance, cannot modify the interests vesting in the personal representative of the testator, Batchelor, so as to transfer any to his heirs-at-law. As the *executor alone had the right* to call the survivor to an account of this estate in land, as of all other of the firm effects, so it

would still remain in him, and could be exercised but for his release and discharge.

The view we thus take dispenses with an examination of the other exceptions, since, if they were sustained, and all the issues upon which they bear were found for the plaintiffs, the obstacle to their prosecution of this action would not be removed, and this obstacle is fatal. The action must be dismissed.

PER CURIAM.                                    Dismissed.