*W. F. RUFFIN and others v. JAMES OVERBY.

*Ejectment—Adverse possession—Colorable title, continuous possession necessary to perfect.*

1. Every possession of land by one other than the claimant is deemed to be adverse until proof to the contrary is made.

2. Where acts of ownership consisted in the payment of taxes on the land, and the employment of agents in respect to it, in the absence of *actual* possession on the part of the alleged owner; *Held,* error to permit the jury to consider such acts in passing upon the question of continuous possession required to perfect a colorable title under a deed. Here, the jury should have been instructed that no such continuous possession was shown by the plaintiff.

(*Jackson* v. *Com'rs,* 1 Dev. & Bat., 177; *Scott* v. *Elkins,* and case cited, 83 N. C., 424; *Logan* v. *Fitzgerald,* 87 N. C., 308; *Pope* v. *Matthis,* 83 N. C., 169; *State* v. *Jones,* 87 N. C., 547, cited and approved).

EJECTMENT tried at Spring Term, 1882, of STOKES Superior Court, before *Eure, J.*

Defendant appealed.

*Messrs. Boyd & Reid, R. B. Glenn* and *J. T. Morehead,* for plaintiffs.

*Messrs. Watson & Glenn* and *Gray & Stamps,* for defendant.

SMITH, C. J. The plaintiffs, asserting their ownership of the large territory described and defined in their complaint, seek in this suit to recover possession of the portion alleged to be wrongfully withheld by the defendant. In his answer, the defendant, not controverting the claim of the plaintiffs to other parts, about which he professes not to know, sets up title in himself to three several tracts which may be within the plaintiffs' boundaries, and the lines of which are specified with precision.

---

*Mr. Justice RUFFIN did not sit on the hearing of this case.

Three separate issues as to the plaintiffs' ownership of the separate tracts were submitted to the jury, and they respond in the affirmative to each.

Upon the trial and in support of their title to the entire area claimed, the plaintiffs produced and read in evidence a deed from Charles Banner, sheriff of stokes county, to Archibald D. Murphy, dated on December 13th, 1815, conveying the land to him in pursuance of a sale for taxes, and wherein it is recited as belonging to Timothy Pickering, of Massachusetts, and also a deed for the same from the said A. D. Murphy to Thomas Ruffin, executed on June 8th, 1822. The plaintiffs exhibited no other deeds.

The proofs offered of possession were as follows: Joel Hill, who, for the ten years preceding 1850, was a deputy of the sheriff, testified to the fact that the Ruffin land was entered on the tax-lists, but of its situation he was ignorant.

William King proved that his brother, Alex. King, now deceased, was the agent of Thomas Ruffin for many years, and resided on his own adjoining farm, but never occupied any part of the Ruffin land; that some twenty-five years before, Thomas Ruffin, Jr., came to the house of the brother of witness and furnished one hundred dollars, which was expended in prospecting for minerals on the land; that on one occasion witness applied to one Banner, another agent, for the purchase of a site for a school-house upon it; that Banner made sale of some of the land, acting for his principal and not as disposing of his own property, and that neither King nor Banner occupied any part of the land.

The tax-lists of Stokes county were produced, and showed that in 1824 the Murphy tract of 2,488 acres was given in, and in 1827 the same number of acres were given in under the name of "Ruffin land."

William J. Moore testified to his becoming an agent for Thomas Ruffin in 1872, and as such, taking possession of the tract described in the plot, except the parts now in controversy;

that he sold some and leased and rented other portions and paid the taxes on 2,400 acres; that Thomas Ruffin, Jr. let King have a portion of the land after his father's death and during his mother's life-time, and that King had, as agent, made sale of a part as before stated; that one Isham Banner claimed some of land under a contract with Banner, the agent, but never entered upon it; that part of the disputed land was in possession of one John Sisemore when witness first knew it, more than twenty years since; that the place occupied by him, known as the "Green Place," and now claimed by the defendant, was apparently an old settlement, and that he (witness), when assuming his agency, took possession of all the territory included in the surveyor's plats, except that then in defendant's possession and claimed as his own property.

The surveyor, George, testified to his running the red lines on the north of the plat, including in his survey the tract of fifty acres designated as the "Green Place" by a deed to John Sisemore, and to his running the boundaries of the other disputed land by a grant from the state to the defendant, issued in 1869, and stated that no other deeds were produced before him.

It was shown that the surface of the territory described in the deeds, from which the plaintiffs claim and in their complaint, is broken wild mountain land on the north, extending up on the Saura Town mountain.

There was no evidence that the plaintiffs, their ancestors, or the agents of either, ever built on, cultivated, or fenced in any portion of it, or exercised acts of ownership other than those already detailed.

The inquires put to the jury, in the form of three separate issues as to the plaintiffs' ownership of each of the tracts claimed by the defendant, received an affirmative answer in their verdict.

Of the series of instructions given to the jury at the instance of the plaintiffs, and to which the defendant excepts, it becomes necessary to notice only those numbered 4, 6 and 8 in disposing of the appeal.

The court charged that:

4. There is no evidence of any possession adverse to the plaintiffs;

6. The jury may consider such acts of ownership, as are in evidence, exercised by the plaintiffs (including, as we understand, those under whom they claim) in making up their verdict upon the question of actual possession;

8. If the plaintiffs (embracing preceding claimants with whom they are in privity of estate) have had actual possession of a part of the land included in the boundary of their deed, such possession would in law extend to the whole, unless some other part was held adversely by another person.

There is error, we think, in the first two of these directions, and while there is none in the other as an abstract legal proposition, in its relations to the two others and the proofs before the jury, it was calculated to mislead them, and may have misled them, in applying it to the evidence, to an erroneous conclusion.

IV. There was evidence of an adversary possession, since every possession is deemed to be such, until its qualified or subservient character is shown and the presumption disproved.

"Every possession is taken to be on the possessor's own title," remarks RUFFIN, C. J., "until the contrary appears, as the possession is in itself the strongest evidence of the claim of title, and, when long continued, of the title also." *Jackson* v. *Com'rs of Hillsboro*, 1 Dev. & Bat., 177. It was shown in the testimony of the agent, Moore, that when he first became acquainted with the land, more than twenty years back, the said John Sisemore was in possession of that in dispute and occupied the "Green Place," which then bore the marks of being "*an old settled place*"; and when the witness took possession in 1872, three years before the bringing the suit, he found the defendant in possession of the part which is now in contest and was then claimed by him, and did not interfere with it.

Again it was proved by one of the surveyors that he ran the lines of red color on the map, including the "Green Place,"

under a deed to Sisemore, and the other disputed land by the boundaries given in a grant from the state to the defendant, issued in 1869. This brief recapitulation is sufficient to show the error in the charge upon this point.

VI. The instruction numbered 6 is, in our opinion, not warranted by the evidence, and the jury ought not to have been left at liberty to infer, from the facts proved, such continuous possession as is required to perfect a colorable title under a deed. The listing of property for taxation and the payment of taxes therefor—contracts for sale or lease merely, without entry—the employment of agencies in the absence of actual possession—these collectively are not acts of possession, for none of them expose the party to the action of the true owner, so as to bar or displace his rights, and confer rights upon others. The *prospecting,* by which we suppose is meant searching for minerals upon the land, is an entry and an act of taking possession with an assertion of title, but how long it was continued is nowhere shown, and it was an arbitrary inference that this act, or any other, showed such a protracted possession as was necessary to divest title out of the state, or, assuming it to be divested, put the title in the plaintiffs or their ancestors.

Of course we have no reference to the possession taken in 1872, the character of which is not questionable; but this possession left, as it found, the defendant in the undisturbed occupation and enjoyment of that which he still holds.

We have recently had occasion to comment on the possession necessary, when accompanied with a color of title, to vest an estate in the person so holding, and to distinguish it from repeated acts of trespass, merely, which have no such effect, in *Gudger* v. *Hensley,* 82 N. C., 481, recognized in *Scott* v. *Elkin,* 83 N. C., 424, and *Logan* v. *Fitzgerald,* 87 N. C., 308, and a further discussion would be needless. See also, *Pope* v. *Mathis,* 83 N. C., 169.

VIII. The eighth instruction, in connection with the fourth, is subject to objection for its direct tendency to mislead. The

court had already ruled that there was no possession hostile to the plaintiff, and the further direction that unless there was, the constructive possession from an entry on part was extended over the bounded area, would be in effect to oust the defendant and preceding tenants from the portion actually occupied by him or them, and cover it with the plaintiffs' constructive possession. The language of the court admits in this respect of an interpretation unauthorized by law, which, if in fact it did not, may have, conducted the jury to their verdict. It is, moreover, the duty of the judge not to indulge in the utterance of mere general principles, though they may be correctly stated, but as is said in the recent case of *State* v. *Jones,* 87 N. C., 547, to apply the law to the facts as the jury may find them, in order to their making an intelligent use of the advice of the court in arriving at a just verdict. In the case before us the jury should have been told that all the facts shown by the plaintiffs do not constitute the continuous possession required by law to perfect their title, and in the absence of evidence their finding should be for the defendant.

To recover, the plaintiffs must show title; and it is as full a defence to the defendant if they fail to prove it in themselves, as it would be, if affirmatively shown to be in the defendant.

For these errors the verdict must be set aside and a *venire de novo* awarded, and it is so adjudged. This will be certified.

Error.                                        *Venire de novo.*