F. M. OSBORNE, Guardian, v. B. F. ANDERSON.

## Deed—Boundary—Ejectment.

1. Where a deed conveyed a life estate, and the grantee remained in possession thirty years or more, the heirs of the grantor setting up no claim to the reversion; *Held* that the occupancy for so long a period becomes in itself an independent source of title.

2. In locating the boundaries of land, the calls in the deed must be fulfilled and effect given to the descriptive words used in it.

3. Under the act of 1874-'75, ch. 256, an action of ejectment may be maintained by a grantee in his own name whenever the grantor has the right to sue, notwithstanding the person in actual possession claims under a title adverse to that of such grantor.

(*Bullard* v. *Barksdale*, 11 Ired., 461; *Davis* v. *McArthur*, 78 N. C., 375, cited and approved).

EJECTMENT tried at Spring Term, 1883, of ALLEGHANY Superior Court, before *Graves, J.*

Verdict and judgment for plaintiff; appeal by defendant.

*Mr. J. W. Todd,* for plaintiff.
*Mr. Q. F. Neal,* for defendant.

SMITH, C. J.  In the year 1828, Joshua Cox, by deed, conveyed to Moses Dixon, an estate limited for want of words of inheritance to the term of his life in the tract of land described in the complaint, of which that in controversy is claimed by the plaintiff to constitute part. Moses Dixon entered and continued in possession of the land until his death, in 1863, as did his son (Back) thereafter until December, 1868, when he sold and conveyed to plaintiff.

In 1856, a grant issued from the state to J. M. Gentry, under whom the defendant Anderson claims, by virtue of a written contract for a tract which embraces the disputed part within its boundaries.

There are no diagrams or maps representing the several tracts, though such are referred to as constituting part of the case sent up, and for want of them, we may fail fully to understand the merits of the controversy, and the point intended to be presented for revision. The case itself is not stated with entire accuracy. Thus, it is said there was evidence tending to show a continuous adverse possession by Moses Dixon for a period of fifty years, while only thirty-five years elapsed from the date of his purchase to his death. Accepting the latter as the time of his occupancy of a part, and constructively of the whole territory embraced in the boundaries of his deed, and making deduction for the interval covered by the act suspending the operation of the statute of limitations, there yet remain more than thirty years, a space more than sufficient to raise the rebuttable presumption of the issue of a grant from the state. *Bullard* v. *Barksdale,* 11 Ired., 461; *Davis* v. *McArthur,* 78 N. C., 357.

The title has thus been divested out of the state and put in the possessor, unless Joshua Cox, or some one succeeding to his estate can show a larger estate than that conveyed to Moses Dixon, reserved, against which the possession of the latter would be inoperative to defeat a recovery by one in whom the reversion is vested.

But there is no such claim asserted or suggested, and hence the long occupancy of the land with limits defined in the deed, irrespective of the latter as color of title, becomes itself an independent source of title in Dixon, which descended to his son.

2. The next exception is to the charge in regard to the boundary and its location as described in the deed.

Starting from a point not in dispute, the line in the words of the deed runs, "south to James and John McMillan's line," and thence west to Cynthia Gambrill's land or line. There was conflicting evidence on the point whether the lines of separate tracts held by James and John McMillan did or did not intersect, and there was no land held by them in common at this place. In running the boundary of the deed to Dixon, it first met with

the land of James, and then continued on with the land to John McMillan, there being a small space, according to some of the testimony, traversed in passing from the one to the other.

The court, in construing the description of the disputed line, directed the jury that after striking the separate tract of James, the line proceeded on to the tract of John, and then ran west to the land of Cynthia Gambrill. In our opinion, this was the correct method of locating the boundary, as it fulfilled the calls of the deed and gave effect to all the descriptive words used in it. The defendant's interpretation requiring the line to stop when it reached the land of James, and then deflect west, leaving out the part in dispute, is inadmissible, as omitting part of the description. It is as reasonable to disregard James' and run to John's land, as it is to disregard the latter and stop at the former. But the running directed by the judge admits neither, and meets the requirement that it shall touch both, and in the order of succession in which they are mentioned in the deed.

3. The record shows a further objection, not pressed on the hearing before us, however, by the appellant, that the land when purchased by the plaintiff, upon his own allegation in the complaint, was in the adverse possession of the defendant, and so no title was acquired under his deed.

This objection is answered by the act of 1874–'75, ch. 256, which was in force when the suit was begun, and provides:

That an action may be maintained by a grantee of real estate in his own name, whenever he, or any grantor, or other person, through whom he may derive title, might maintain such action, notwithstanding the grant of such grantor or other conveyance be void, by reason of the actual possession of a person claiming under a title adverse to that of such grantor or other person, at the time of the delivery of such grant or other conveyance.

It must be declared there is no error, and the judgment is affirmed.