\*ENNIS STATON v. JACOB MULLIS.

*Deed—Construction of—Color of Title—Adverse Possession— Estoppel—Burden of Proof—Possession—Description and Location.*

1. When the habendum and warranty clause of a deed are joined, and the intention to convey a fee is clear, the words of inheritance will be so transposed as to connect them with the conveying terms, so as to secure the intended effect of the deed.

\*Ashe, J., having been of counsel, did not sit on the hearing of this case.

2. A deed conveying a life-estate is color of title, and when accompanied by adverse possession for the required time, will ripen into a good title to the life estate so granted.

3. When the plaintiff claims under a deed purporting to convey the land in dispute, and shows an apparently adverse possession, the burden of proof is on the defendant to show that such possession is not adverse; and when he claims a reversionary estate after a life-estate, that such life-estate determined too short a time before the bringing of the action to bar his right.

4. A deed is an estoppel, even as between the parties thereto, only as to the estate conveyed.

5. Where A, having a life-estate, conveys to B in fee, who conveys to C, the reversioner or remainderman does not have a right of action until the death of the life tenant. At his death, the possession becomes adverse, and will ripen into a good title by seven years' possession, the title being out of the State.

6. Possession by a grantee of any part of the land described in his deed, is constructive possession of the entire tract against all persons, except a party having a superior title to the part of which there is only constructive possession.

7. When the beginning corner was located, and there was evidence showing marked trees, corners, natural objects, &c. ; *It was held*, some evidence from which a jury might locate the land in controversy.

8. It is not error in a Judge to refuse to charge abstract principles of law which have no application to the case.

9. When a witness swears to his possession, with repeated acts of ownership extending over many years, which evidence is allowed to go unchallenged to jury, it is not improper for the Judge to assume a legal possession to have the been testified to and to so present the case in his charge to the jury.

(*Davis* v. *Higgins,* 91 N. C., 382 ; *Allen* v. *Bowen,* 74 N. C., 155 ; *Stell* v. *Barham,* 87 N. C., 62 ; *Batchelor* v. *Whitaker,* 88 N. C., 350 ; *Osborn* v. *Anderson* 89 N. C., 261 ; *Simpson* v. *Blount,* 3 Dev., 34 ; *Williams* v. *Buchanan,* 1 Ired., 535 ; *Gudger* v. *Hensley,* 82 N. C., 481 ; *Logan* v. *Fitzgerald,* 87 N. C. 308, cited and approved).

Civil Action for the possession of land, heard before *MacRae, Judge,* and a jury, at Spring Term, 1884, of Union Superior Court.

The facts appear fully in the opinion.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Messrs. Payne & Vann* and *Haywood & Haywood,* for the plaintiff.

*Messrs. Covington & Adams* and *J. W. Hinsdale,* for the defendant.

SMITH, C. J.  In support of his title to the land in dispute, the plaintiff introduced a grant from the State, issued on the 20th day of December, 1799, to Francis Coburn, and successive deeds from him to the plaintiff.  The last in the series is a deed made on May 3, 1832, by Frederick Staton to his son, the plaintiff, purporting to convey a tract of five hundred acres, parcel of the original grant.  Objection was made to the admission in evidence of the grant and of the two deeds, more especially that

40

from John Cobb to Vernal Adams for two hundred acres, exe-. cuted in October, 1814, upon various grounds that have been abandoned as untenable, in the argument before us, under the ruling in the case of *Davis* v. *Higgins*, 91 N. C., 382.

Objection was also taken to the operation of several of the deeds, particularly to that executed in October, 1819, by Vernal Adams to Frederick Staton, and to that by the latter to the plaintiff, as conveying, for want of words of inheritance, a life estate only to the respective grantees.   In reference to this construction of the deeds it is only necessary to say, that in form they are quite as favorable to a construction which passes an estate in fee as that before the court in *Allen* v. *Bowen*, 74 N. C., 155, and equally admit the transfer of the concluding words "his heirs and assigns forever," which follow the clause of warranty, to the operative conveying words of the instrument.

In *Allen* v. *Bowen, supra*, the intention is declared to be to "sell all the right, title and claim" of the grantor in the premises, and the concluding clause is as follows: "And we, Thomas A. Pritchett and Elizabeth his wife, do, for themselves, their heirs, executors, administrators, and assigns *forever*, the land to the said William Bowen, *his heirs*, executors, administrators, and assigns forever, clear of all incumbrances whatever."   While this was an independent sentence, separated by a period from the preceding operative words, it was transposed and annexed to them, to give the deed effect as a conveyance of the inheritance, in carrying out the manifest intent of the parties to it.

The deed now under examination, from Frederick Staton to the plaintiff, and in this feature the others are similar, conveys the described land, with appurtenances belonging, to the grantee in *fee simple*, and without a pause or interruption proceeds, "And I, the said Frederick Staton, for myself, my heirs and assigns doth hereby warrant and forever defend the above bargained land free and clear from myself, my heirs and assigns, and from the lawful claim or claims of any person or persons claiming any lawful claims whatsoever unto the said Ennis Staton, *his heirs*

and assigns forever." The instrument expresses the intent to convey the inheritance, and that intent may be effectuated with equal, if not stronger reasons, by transposing and annexing to the conveying words the concluding part of the sentence. The warranty is spent before reaching that part, and is full and complete without it. There is no division in the sentences to interfere with the transposition of the inheritable words from the place where they are not needed, and their annexation to the conveying terms by which the intended effect of the instrument will be secured.

The cases relied on in the brief of appellant's counsel, as modifying the decision in that case, *Stell* v. *Barham*, 87 N. C., 62, and *Batchelor* v. *Whitaker*, 88 N. C., 350, do not profess to overrule it, but to draw distinctions which render it inapplicable as a precedent. Whether they are consistent is not material in the present inquiry, since the plaintiff, if he only acquires an estate for his own life under his father's deed, was living when the present term began; and though it is suggested that he has since died, such life estate is sufficient to sustain the action, so far as title is concerned. The deed at least constitutes color of title, and accompanied with continuous adverse occupancy since its execution, during the long interval of time that has followed, is sufficient to perfect the life estate.

We do not yield our assent to the contention of counsel, that this possession did not become adverse until after the death of Frederick Staton, the deed to whom, upon a like rule of construction, would pass but an estate for his life, since Vernal Adams, his immediate grantor, and those who preceded him in the claim of title up to Coburn, to whom the grant from the State issued, for a similar supposed defect, had no greater estate in the land than for their several lives.

The previous owners all died before the institution of the suit, but the record does not show when their respective deaths occurred, except that Frederick Staton died about the close of the late civil war. The conveyance from Coburn to Cobb, bears date in 1806,

and if the latter was then of full age and capable of contracting, he would have been about 87 years of age when the summons was sued out, and if he or any other, died any considerable period before the death of Frederick Staton, the estate would have come to an end, and the plaintiff's possession then rendered hostile, continued for the required interval, would have sufficed to perfect his life estate against all claimants.

We cannot infer from the mere admission that these prior life-tenants died previous to the commencement of the suit, the time when their several deaths occurred, and the question arises, upon whom devolves the duty of showing that the plaintiff's possession under his deed, apparently hostile, was not really so for the necessary period of time to bar a reversionary estate retained in another, who is not barred of his entry and right of action. In our opinion the burden of proving that the possession is not adverse to the owner of such reversion for a period sufficient to bar his recovery, and to this end the date of his death, devolved upon the defendant. He is called upon to defeat the plaintiff's apparent title by proof of a superior outstanding title in another, since, in the absence of such evidence, possession under the deed for a sufficient space would confirm the estate proposing to pass under the deed.

Again, the act of accepting the deed from his father, does not operate as an estoppel, even *inter partes* beyond the estate conveyed, upon the plaintiff, nor is he thereby precluded from denying that any reversionary estate remained in Frederick, for the instrument upon its face does not show that all the estate vested in him was not thereby transmitted to the plaintiff. The title being out of the State by reason of the grant, it came to an end at the death of the first life-tenant, Cobb, under his defective deed, and all the estate claimed under deeds with adequate possession of the land, was adverse to the owners of the reversion, and gave effect to those deeds. *Osborne* v. *Anderson*, 89 N. C., 261.

Passing from this aspect of the case, we come to the consideration of the exceptions, which rest upon the alleged inability of the plaintiff to locate the grant or his own deed by the lines therein mentioned, so as to include any of the land in possession of the defendant, and the want of evidence of his possession under his deed. The surveyor, C. W. Watkins, examined by the plaintiff, ran the boundaries of the grant as shown in the accompanying map, and found at various points, according to his testimony, indications from pointers, marked trees, and other natural objects, of corners and lines, corresponding with some variations in distance and slight deviations in course, with the calls contained in the grant.

The beginning point seems to have been fully established. This, with other evidence, is sufficient to warrant the jury in determining its location. In the map, the Mullis land, claimed by the defendant, lies wholly west of Negro Head Creek, with its eastern boundary pursuing a course nearly that of the creek, and touching the creek as the defendant contends, at the southeast corner, so as to include all the territory in dispute within its limits. The plaintiff, however, insists upon its stopping at the corner G, and running thence to H, it being designated in the grant as running from Stewart's corner at G, with his (the Mullis) other line, south 31° west 18 chains to his corner. The line as actually run by the surveyor in that direction, falls short of reaching the point by only 40 links, being 17 chains and 60 links. This location extends the grant over the area in contest. There is, and can be, no lappage, for where the Mullis line is found, there must be the line of the grant which calls for it. We think there was sufficient evidence before the jury to warrant their finding the position of this divisional line, and its bearing upon the controversy becomes material in the fact that if the disputed land lies outside the boundaries of the Mullis tract and within that of the plaintiff's deed, his possession of any part of the land described therein, would be a constructive possession of the whole, and this possession continued for seven years without

interruption from others so as to expose them to his action, would perfect his title, except as against one who has the superior title to the part not in the actual, as distinguished from the constructive, possession of the plaintiff.

The next objection to be examined, is the alleged vagueness of the descriptive words used in designating the land, rendering incapable of identification what the deed undertakes to convey.

Some portions of the description of the corpus or subject matter of the conveyance, are positive and definite. The land is represented to lie on both sides of Negro Head Creek. It is bounded by a portion of the creek above the mouth of Bushy Branch, which empties into it—by the Branch up to its intersection with McRae's line, and thence along that line. Its southwest corner is Adams' corner on Cedar Branch ; proceeding west from McRae's line, the boundary crosses the creek, and there meets with the Mullis line, which it follows further westward, until crossing it, it proceeds on by different deflections, until it arrives at Cedar Branch. All the objects called for are laid down on the map, and the only difficulty in closing up the gap on the north, is in ascertaining how the line shall be run between the McRae and Mullis tracts in conformity to the requirements of the plaintiff's deed. If this be done by starting at 14, which, the surveyor says, is the terminus of the McRae land, along whose line that of the plaintiff runs, or from a point just north of 14, and pursuing a course which will become coincident with the dotted line after passing the creek, and this be deemed the true boundary, it will not take in, according to the testimony of the witness, any land of which the defendant is in possession. On the other hand, if the correct location be fixed by continuing the line between three and four, passing H, and proceeding on to the creek, and then by the same route reaching the McRae line ; or, if the true position of the line be from four to five or from H to G, by either of such runnings the defendant would be made a trespasser. If the line from G to H be a boundary of the grant, as placed upon the map by the surveyor, it would seem to

be a boundary for the Mullis tract, and inasmuch as the plaintiff's deed also calls for that boundary, his land must come up to, and be bordered on it.

There was much evidence heard before the jury upon the contention as to these matters, and they were charged that if the land described in the plaintiff's deed was part of that embraced in the grant to Coburn, that is to say, if starting at D or 14, and thence running north 5° west to E, or the intermediate point between E and F, and thence to F, and crossing the creek, proceeding on by W and G to H, the lines thus run would include land in the possession of the defendant, (and about this enclosure there seemed to be no controversy), the response to the first issue should be in the affirmative. So, too, the jury were charged that the title being out of the State, the deed to the plaintiff with possession (and that the plaintiff testified to his having been in possession since May 3, 1832), would be sufficient whether it passed an estate in fee or for life.

Some of the instructions asked were, that the Judge should define and explain the character of a possession required to convert a defective into a perfect title under a deed purporting to pass an estate in land, the omission to give which cannot be assigned for error, for the reason that the facts to which such an instruction would be applied do not appear in the evidence.

The plaintiff testifies that his brother had a clearing of eleven acres on the 640-acre track, and was *in possession* for about twelve years before going west, and that he, the witness, has kept it ever since his purchase from his father; that he got timber whenever he wanted it from that corner, to the Martin Ross corner, and to the creek, right on the corner of the 640-acre grant at Copperhead, marked H. The Judge states the plaintiff's testimony to be, as in fact it was, that "he had been in possession of the land described in said (his own) deed since May 3, 1832," the date of its execution.

We cannot undertake to say that a constant cutting of timber up to a defined line during so long a period, as of right, and

without interference or complaint from any one, is not an assertion of ownership, and a possession sufficient to give effect to that, which, in the absence of the exercise of such rights of ownership, would be but color of title.

In *Simpson* v. *Blount*, 3 Dev., 34, Ruffin, J., declares that "exercising that dominion over the thing, and taking that use and profit which it is capable of yielding *in its present state* (the italics are his own), is a possession."

Of similar import is the definition given by Gaston, J., in *Williams* v. *Buchanan*, 1 Ired., 535, when he says that "possession is denoted by the exercise of acts of dominion over it (the property) in making the ordinary use, and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated, as to show that they are done in the character of owner, and not of an occasional trespasser." The subject is considered in *Gudger* v. *Hensley*, 82 N. C., 481.

The court is not required to lay down abstract rules of law not pertinent to any aspect of the proofs, but to declare the law as applicable to the facts that, upon the evidence, the jury may be warranted in finding, and to aid them with this knowledge in their inquiry.

The appellant should have asked an instruction predicated upon the facts proved, or as the jury would have been warranted in finding them upon the testimony, that they do not constitute possession, within the meaning of the rule which attaches such consequences to a deed, in itself conveying no title. If the instruction had been refused, when it ought to have been given, it would be a reviewable error capable of correction. But none such was asked. The witness swore to his possession, to repeated acts of himself extending over many years in assertion of ownership, and this testimony is before the jury unchallenged. It was entirely proper under such circumstances for the court to assume a legal possession to have been testified to, and so to present the case in the charge to the jury.

This view is not in conflict with the ruling in *Logan* v. *Fitzgerald*, 87 N. C., 308, cited in the argument upon the point now considered. There the claim was under an alleged possession, with and without color of title, and the Court below failed to discriminate between the possession required in the two cases.

The error in that case consisted in the neglect of the Court to explain that in the absence of any deed or instrument sufficient to afford color of title, " the occupation *de facto* is the measure of possession," and it cannot be enlarged by construction up to boundaries, as is the rule when there is a supporting color of title. This was calculated to mislead.

In this case there is an accompanying deed, and the possession of any part, is possession of all within the boundaries of it, except when some portion is held under a superior title, to which actual occupation does not extend. The Judge ought not to have told the jury that there was no evidence of possession, for this would neither accord with the testimony reported, nor with the Judge's understanding and statement of it.

The special instructions numbered 12, 13, 14 were given with modifications of the first two of them, which in our opinion were entirely proper. Indeed, it is questionable whether the defendant was entitled to them as modified, for while the description of the beginning in the plaintiff's deed fixes it " on the east side of Negro Head Creek, in McRae's line," its position in the line may be determined, or evidence of it derived from other provisions of the deed. Besides, in assuming the starting point to be at 14, which the surveyor states to be the southwest corner of the McRae tract, you depart at once from his line, while the direction in the deed is, that thence the line of the plaintiff shall run " with said McRae's line, crossing said creek," and then when meeting the Mullis line, to pursue its course to Smith's line, all of which calls are ignored in the requested instructions.

Nor is it very important to ascertain the precise point of the beginning in McRae's line, since wherever it is placed, the final call requires the boundary to run from the ascertained intersec-

tion of Bushy Branch with it, along that line at 12, and to follow it to the beginning, thus completing the enclosure.

Upon a view of the whole case, and after re-arguments, full and exhaustive, upon the exceptions contained in the record, we are brought to the conclusion that none of them are tenable, and that there is no error in the rulings upon them. The appellant's case was fairly and even favorably submitted to the jury, and their verdict is sustained by the evidence. We have considered, and can consider only assigned error, except there be in the charge an erroneous and misleading proposition of law, and none such appear.

The judgment must be affirmed.

No error.                                        Affirmed.