JOSEPHUS BAUM et al. v. THE CURRITUCK SHOOTING CLUB.

### *Possession—Evidence of Pleading.*

1. Exercising such a dominion of land, and making that use of it, to which it is capable of being put in its then state, such acts to be so repeated as to show that they are done in the character of owner, is a possession of land, as distinguished from mere trespasses.

2. Where the land in question was directly on the ocean, and had been incapable of cultivation for a long period, and there was evidence that the plaintiffs and those under whom they claimed had cultivated a part of the land as long as it was fit for that purpose, and subsequently had used it in the only way in which it was capable of being used, by grazing cattle on it, and renting it out to shooters; *It was held,* some evidence of possession to go to the jury.

3. In a petition for partition, an allegation that the defendant has an estate in a certain number of acres of said land, is insufficient, as it would indicate that the defendant has a several estate in that number of acres.

(*Simpson* v. *Blount*, 3. Dev., 34; *Williams* v. *Buchanan*, 1 Ired., 535; *Gudger* v. *Hensley*, 82 N. C., 481; *Staton* v. *Mullis*, 92 N. C., 623; cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge,* and a jury, at Fall Term, 1885, of CURRITUCK Superior Court.

This proceeding, instituted in the Superior Court of Currituck county, before the clerk, on the 6th day of September, 1883, upon an allegation of a tenancy in common among the parties, is to have partition of a tract of land, described in the petition as containing two hundred acres more or less, and lying between the waters of Beasley's Bay and the Atlantic Ocean. The allegation is, that the plaintiff Josephus Baum is entitled to one moiety of the land, the defendant company to twenty-five acres thereof, and the plaintiff Edward M. to the remainder.

The answer, denying the other allegations, admits that the said Josephus and the company hold as tenants in common a tract of land adjoining the land of the defendant on the north and south, between the aforesaid waters, which is capable of division, and assents to its being made under the direction of the Court. The issue thus made, was transferred to the Superior Court in term, and put upon the civil issue docket for trial, and is in this form : " Are the plaintiffs, or either of them, tenants in common of the lands described in the complaint, except that part admitted in defendant's answer ?" And to this the record states the jury answered " No."

Upon the trial, the plaintiffs introduced a series of deeds, with the will of one Joseph Baum, copies of which are set out as exhibits, and are as follows :

I. From Joseph Gray and wife Mary, made October 24th, 1801, to Thomas White, describing the land conveyed as

"containing fifty acres, lying on the said Banks; to be laid off on the north end of a deed given by William C. Dowdy to John Woodhouse, bearing date the 20th day of February, 1745, to be as wide on the Sound side as on the sea-side, so as to include the aforesaid fifty acres.

II. From said Thomas White to Willoughby Dowdy, dated June 7th, 1819, with the same words of description, except substituting the word "sound" in place of the word "said," immediately preceding "Banks." The latter is obviously a miscopy.

III. From Willoughby Dowdy to Samuel Cooper, executed January 29th, 1840, designating the land as situated on the Banks. bounded as follows: on the north by Thomas Poyner's line; on the west by the Bay; on the south by the lands formerly belonging to Thomas Dowdy; thence an east course to the sea; thence along the sea to the first station, containing fifty acres."

IV. From Samuel. Cooper to C. T. Chaplain, trustee, dated February 3d, 1840, conveying by a similar description as the preceding deed.

V. From said trustee on January 12th, 1844, to Joseph Baum, the highest bidder at a public sale, with a slight variance in the terms of description, thus: "A certain tract of land on said Banks and marsh, lying at the head of Beasley's Bay, near the sea, joining the sea on the east, joining the lands of Abraham Baum on the south, joining the bay on the west, and joining the land of the Poyners on the north, being one hundred acres more or less."

VI. The will of the last named grantee, dated November 11th, 1880, and duly proved and recorded, in the 5th clause whereof, he devises as follows: "I give and bequeath to my two sons, Jacob and Josephus Baum, all of my lands lying between Beasley's beach and the Old House Creek, together with all my island of marsh, lying to the north of Peter's Creek, to the north end of Hog Island; also one hundred

acres of beach land, which I purchased of Caleb Dowdy and Samuel Cooper, a reference to the deeds from said Dowdy and Cooper will more fully appear, it being the land whereon my son Abraham Baum now lives," &c.

VII. A deed from Caleb Dowdy and his mother Sarah, made in 1838, to the aforesaid testator in his life-time, conveying their right, title, and claim, " on the North Banks, between Whale Head and the said Joseph Baum's, beginning on the sea-side, joining Willoughby Dowdy's land; thence binding the said Dowdy's line to Currituck Sound, nearly west course; thence as the sound runs, nearly south, to Elizabeth Dowdy's land; thence nearly east to the sea-side; thence as the sea beach to the first station."

VIII. A deed from the commissioner appointed in a petition of the heirs at law of Jacob Baum for partition and sale of descended lands, to E. M. Baum, conveying an undivided half of several tracts, and among them of the " Cooper tract of fifty acres," and of a tract known as "Sal's Hammock," containing one hundred and seven acres, more or less, lying on the north side of Poyner's Creek, adjoining the lands of the Currituck Shooting Club, Josephus Baum and others, all of the said land being marsh or beach land, in said county of Currituck."

Such was the documentary evidence offered in support of the plaintiffs' title, and the oral testimony in supplement was as follows:

Josephus Baum testified as follows: " I knew Willoughby Dowdy; knew him as long ago as forty years. He lived on the west side of the sound. He never lived on the beach. I knew the boundaries of the Willoughby Dowdy land as described in his deed to Samuel Cooper. I knew that its boundaries embraced the land in the plat. I know where the Thomas Poyner line is, and also where the Thomas Dowdy land is; old persons who are dead have told me where the Poyner line was. It is correct as stated in the plat.

I know the Thomas Dowdy line. I am fifty years old. I have known the land ever since 1840. It is on the Banks, lying between the sea and Beasley's Bay. It has been used for gunning and grazing. That is all it is fit for; the sand has nearly covered it all. A part of it was cultivated twenty or twenty-five years ago, by William Dowdy, a tenant of Willoughby Dowdy; afterwards Samuel Cooper cultivated it one or two years, and then by Abram Baum about three. It was cultivated in all for eight years; about one third of the whole tract was covered with myrtle. It is all now a bald beach, and has not been fit for cultivation for twenty-five years. When I first knew it, a third could have been cultivated. It is valuable for shooting. I rented it out several years from 1855 to the war, but not during the war. I did not live on it during the war. After the war I leased it out until 1869. In 1869 the administrator of Jacob Baum rented an undivided half to the Currituck Shooting Club. I have seen them occupying it up to this spring from that time."

Abram Baum testified as follows: " I have known the lands for fifty-five years. I know where Thomas Poyner's line was. My line was the same as Thomas Dowdy's line. Thos. Poyner showed me that line fifty-five years ago. A house was built on the Willoughby Dowdy tract about fifty-two years ago. Willoughby Dowdy built it. It has been moved away for about thirty years. Willoughby Dowdy rented the land three years to William Dowdy. Cooper cultivated it three years, and I cultivated it three years. This land was generally known as the Cooper and Willoughby Dowdy land. For twenty-five years the sand has covered the land, and there has been no fence around it. There was no fence; anybody's cattle could run on it. There has been a box there within the last fifteen years. The Currituck Shooting Club has a box there. Several persons claimed it, but I don't know how; this is the same land as is described in

Samuel Cooper's deed to C. T. Chaplain, and in C. T. Chaplain's deed to Jos. Baum. The land covered by the deed of Caleb Dowdy and Sarah Dowdy is south of the Willoughby Dowdy land. Abram Baum lived on it at the date of my father's will. The Club-house is now situated on it. Caleb and Thomas Dowdy's lines are the same.

"No one cultivated the land in question (the Willoughby Dowdy land) after the house was removed from it, except Abram Baum, who cultivated it subsequently for about three years. That he was present at the division of the Dowdy land; so were Mr. Poyner and some others. At that time Mr. Poyner showed me the south line of his land, which comes down to Glade Creek, and was the north line of the Willoughby Dowdy land. He, Baum, afterwards bought the Thomas Dowdy land, and recognized the division line of the Dowdys. Thomas Dowdy's share was one hundred and fifty acres, and Willoughby Dowdy's share was equally as large. It extended from Thomas Poyner's on the north to my line (the Thomas Dowdy line) on the south. Since I first knew the land there have been large accretions to it by the gradual filling up of the water on the bay, as much as fifty acres.

"The Caleb Dowdy and Thomas Dowdy line is the same as the line of myself and now the Currituck Shooting Club. After my father bought the land, he removed the house, and I cultivated about twenty acres, where the house had stood, about three years. Afterwards my father used the land for grazing his cattle until his death; there never was a fence around the land; then Josephus Baum used it in the same way, and also he rented it out to gunners, until the war; also after the war. The widow of Jacob Baum rented out the interest of Jacob Baum in the same."

The Court being of opinion that upon the evidence the plaintiff could not recover, that is, that there was none to

warrant the jury in finding the affirmative, directed a negative response to be entered.

From this ruling the plaintiffs appeal.

*Mr. E. C. Smith,* for the plaintiffs. ·
*Mr. John Gatling,* for the defendant.

SMITH, C. J., (after stating the facts).  Without the aid which the presence of the plat of the surveyor and his explanations of the lines of the disputed territory might have afforded, we find it difficult to understand the matter in dispute.

Assuming, however, the identity of the land as traced through the successive deeds, the first dated more than three fourths of a century back, and the last conveying it to Joseph Baum in January, 1844, who devises in equal parts, in the before recited clause of the will to his sons, Josephus and Jacob, the administrator of the latter of whom, in 1869, rented an undivided half part to the Shooting Club, the only inquiry is, whether the exercise of dominion over the property by the successive claimants, in the manner stated by the witnesses, was evidence to be considered by the jury of a divesting of title out of the State and putting it in the said devisees.

We shall not recapitulate them, as the acts of ownership are fully set out in the testimony of the two witnesses examined, further than to say, that they seem to have been such as were proper to be passed on by the jury.  What are acts of possession, as distinguished from trespasses repeated, which in connection with an instrument giving color of title, or so long continued as to avail without such color, have been often heretofore before the Court, and have been as well defined as perhaps the subject matter will admit. *Simpson* v. *Blount,* 3 Dev., 34; *Williams* v. *Buchanan,* 1 Ired., 535; *Gudger* v. *Hensley,* 82 N. C., 481; *Staton* v. *Mullis,* 92 N.

G., 623. The rule is thus declared by RUFFIN, J., in the case first cited: "Exercising that dominion over the thing, and taking that use and profit which it is capable of yielding in its present state, is a possession;" and GASTON, J., similarly defines a legal possession, in the second case, adding thereto the words, "such acts to be so repeated as to show that they are done in the character of owner, and not of an occasional trespasser."

There was evidence approximating, if not fully meeting these required conditions, that should have been submitted to the jury, and there is error in the ruling of the Court that there was none.

It would seem from the complaint that it was intended to charge some interest in the defendant as a tenant in common possessing a present estate in a moiety of the whole land, the remainder being in the plaintiff named, but it is very insufficiently indicated in the allegation that the company have an estate in twenty-five acres, as if a severable portion to that extent. But this may be corrected and truly set out hereafter by amendment, as the point is not now before us.

The verdict must be set aside, and a new trial had.

Error. Reversed.