### COPLEY et al. v. BALL et al.

(Circuit Court of Appeals, Fourth Circuit. December 13. 1909.)

No. 878.

1. LIFE ESTATES (§ 8*) — ADVERSE POSSESSION — POSSESSION CONSISTENT WITH THAT OF ANOTHER—BY OWNER OF LIFE ESTATE AGAINST REMAINDERMEN.
    The owner of a life estate, whether the life tenant or a grantee, cannot acquire a fee-simple title by possession against the remaindermen, but his possession inures to their benefit as against an adverse claimant.
    [Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 24–28; Dec. Dig. § 8.*]

2. ESTOPPEL (§ 29*)—ESTOPPEL OF GRANTEE—DEED BY LIFE TENANT. •
    Defendants' predecessors in title purchased land from a life tenant under a will, the remainder being in her heirs, and took a deed from her and her husband which was recorded, and which described the land as that de-

vised by the testator to the grantor and heirs. *Held*, that defendants could not assert as against the remaindermen, after the death of the life tenant, a prior title in the husband which, if it existed, he was prior to the conveyance estopped to set up as against his wife or her testator, but that the deed conveyed only the wife's life estate; the rule in Shelley's Case not being in force in the state.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 69-73; Dec. Dig. § 29.*]

3. COURTS (§ 36*)—PRESUMPTIONS AS TO JURISDICTION—COURTS OF SPECIAL AND LIMITED POWERS.

Under the rule of the federal courts, presumptions cannot be used in support of the jurisdiction of courts of special and limited powers.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 142-144; Dec. Dig. § 36.*]

4. WILLS (§ 426*)—PROBATE—EFFECT—FOREIGN PROBATE—EVIDENCE OF TITLE.

Under Code W. Va. 1868, c. 118, § 5, and related provisions, the county recorder of any county was given the power of a court of probate to admit to record and certify wills and "to hear proof of and admit wills and authenticated copies thereof to probate," including foreign wills as wills of real estate if it appeared that they were so executed as to be valid wills of lands in that state. *Held* that, such a recorder having jurisdiction to determine the sufficiency of a foreign will as a will of lands, his determination could not be collaterally attacked, and his certificate that he admitted a copy of a foreign will devising lands in that state "to record" was in effect that it was admitted to probate and was sufficient to entitle the will to admission in evidence to establish the devise in an action of ejectment by the devisees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 915; Dec. Dig. § 426;* Evidence, Cent. Dig. § 1416.]

5. EJECTMENT (§ 111*)—TRIAL—EXCESSIVE VERDICT—POWER OF COURT TO ALLOW REMITTITUR.

Where plaintiffs in ejectment have recovered a general verdict, it is within the power of the court to allow them to remit the same as to lands not covered by their proof of title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 331, 344; Dec. Dig. § 111.*]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Charleston.

Action by Millard F. Ball, Nannie F. Reed, John Reed, R. Louisa Paisley, Rosa Lee Findley, and Charles Findley against William M. Copley, Yawkey & Freeman Company, Limited, and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

This is an action in ejectment instituted in the Circuit Court of the United States for the Southern district of West Virginia by Millard F. Ball, Nannie F. Reed, R. Louisa Paisley, and Rosa Lee Findley, four of the twelve children and heirs at law of Eliza Jane Ball, deceased, for the recovery of their respective interests in a certain boundary of land supposed to contain 390 acres, situate on Spruce fork of Little Coal river, in the county of Boone, W. Va., which was devised by the will of Parkinson Shumate to the said Eliza Jane Ball during her life and then to her heirs.

It appears from the evidence that some time prior to the year 1848, one Clendennin was deputy sheriff of Logan county, Virginia—now West Virginia—became involved, and to indemnify his sureties on his official bond he executed a trust deed over certain lands held by him and lying in Boone county. Richard Stratton was the trustee in that deed of trust. Afterwards, in consideration that Augustus Ball pay off the debts, Clendennin conveyed the lands covered by this deed of trust (the subject of controversy in this suit) to Au-

gustus Ball. This conveyance was made about the year 1848; but the trust deed was never properly released. Augustus Ball was the husband of the said Eliza Jane Ball. Shortly after the conveyance of the land to Ball, in the year 1848, Clendennin moved to the West and died, leaving a number of children and heirs at law. It appears from the evidence of Jacob Ball. who is a brother of Augustus Ball, that Augustus Ball placed his father on said land, who remained there until about 1849 or 1850, as his tenant, at which time said Augustus Ball sold the lands to Burwell Hinchman for a consideration of about $800 and placed the said Hinchman in actual possession of the said Clendennin lands; and that, while the said Hinchman occupied the same, he claimed it as his own. It further appears that, after the sale to Hinchman, Augustus Ball left that section of the country and went to Flat Top Mountain; he and his wife separated, and Augustus Ball went West, and his wife went to her father, Parkinson Shumate, who lived in Giles county, Va. After the death of two of their children, Augustus Ball returned from the West to the neighborhood of the lands in question, his wife joined him there, and they lived together. It further appears that Augustus Ball was without means and without a home, and that he and his family lived around among their relations; that Eliza Jane Ball went to see her father in Giles county, Va., and as a result of the visit, he (Parkinson Shumate) purchased from Burwell S. Hinchman the 390 acres, being the 173-acre boundary sold to said Hinchman by the said Augustus Ball, and an adjoining tract of 217 acres for which Hinchman had obtained a patent in the meantime. The deed from Hinchman to Shumate bears date of December 31, 1859, and on January 10, 1860, the said deed was duly recorded and the following statement incorporated as a part of the record:

"This deed, together with the certificate thereto annexed as acknowledgment, was this day received into this office for record, and at the instance of Augustus Ball, the same is admitted."

It further appears that Augustus Ball and Eliza Jane Ball, his wife, and their children, immediately after this purchase, took possession of the land in question under the said Parkinson Shumate, and continued to reside there under Shumate until his death, which occurred in 1866.

The will of the said Shumate bears date of June 30, 1866, and was probated in Giles county August 13, 1866, and afterwards in Mercer county, W. Va., and contains the following clause:

"Fourth. I will and bequeath to my daughter Eliza Jane Ball during her natural life, and then to her heirs, the plantation which she now lives on, in the county of Boone, West Virginia."

After the death of Parkinson Shumate, Ball and his family continued to live on said plantation, Eliza Jane Ball claiming the same under said will, until the 10th day of February, 1868, when in the way of an exchange of lands the said Augustus Ball and Eliza Jane Ball executed a deed purporting to convey to Johnson Copley said several tracts of land, estimated to be a boundary of 390 acres, described therein as "the same land Parkinson Shumate devised to Eliza Jane Ball and heirs," and the said Johnson Copley and wife, by deed of same date, conveyed to the said Eliza Jane Ball a tract of land near the town of Madison. In said deed from Copley to Eliza Jane Ball there is the following provision:

"However should any part of the lands taken in exchange for the lands hereby conveyed be recovered by the heirs of the party of the second part the lands hereby conveyed shall stand good for this recovery."

The deed from Ball and wife to Copley was recorded February 11, 1868, and the land transferred on the land books for that year, from Parkinson Shumate, in whose name it had been assessed for 1866 and 1867 (there being no land books for 1861 to 1865, inclusive) to Johnson Copley. Augustus Ball was the assessor for Boone county at that time, and in his handwriting is an entry on said land books, in the column "From Whom Transferred, etc.," as follows:

"Heirs of P. Shumate, deceased; deed from A. Ball and wife."

Johnson Copley took possession of said 390 acres of land immediately after the execution of said deed in 1868, and he and those claiming under him held and occupied the same down to the year 1905, when Eliza Jane Ball died.

The children—heirs at law of the said Eliza Jane Ball—the owners of the remainder in fee under the will of the said Parkinson Shumate, demanded possession of said land, which being refused, this action of ejectment was instituted.

W. R. Thompson and F. C. Leftwich, for plaintiffs in error.

W. E. R. Byrne (Linn & Byrne, on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and WADDILL and McDOWELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The plaintiffs below bring this action in ejectment to recover certain lands described in the complaint.

It is insisted by plaintiffs in error "that a plaintiff in ejectment can never recover upon an equitable title." This is a broad proposition and is subject to many exceptions; but we do not think this question arises in this controversy, as will hereinafter appear.

The plaintiffs allege that they are the heirs at law of Eliza Jane Ball, who, under the will of her father (Parkinson Shumate), held a life estate in the lands in controversy with a remainder in fee to the plaintiffs in this action.

From an examination of the laws of West Virginia, we find that the rule in Shelley's Case has been practically abolished in that state. Otherwise, we would feel bound to hold that, under the will of Parkinson Shumate, the ancestor of plaintiffs took a fee-simple title to the lands therein devised.

This being an action in ejectment, the general rule is that, in order to entitle the plaintiffs to recover, they must show by sufficient legal evidence that they are the owners and entitled to possession of the lands in controversy. While there was evidence as to the title of this land prior to the alleged deed from Augustus Ball to Burwell Hinchman, yet the real controversy begins at that stage of the proceedings. The court submitted the question as to whether Ball conveyed the lands in controversy to Hinchman, and the issue thus raised was found by the jury in favor of the plaintiffs. This question having been submitted to the jury with proper instructions for their guidance, and there being sufficient legal evidence to sustain the finding of the jury on this point, we can now see no reason for disturbing the verdict in that respect.

It appears from the record that the state parted with the title to these lands by patents, duly issued, and there seems to be no controversy as respects that question.

As already stated, the real contest in this case begins with the deed to Hinchman. The deed to Hinchman was executed about 1849 or 1850. The evidence as to the exact date is not specific. Immediately after the execution of this deed, Hinchman entered into possession of the premises, and he and those claiming under him remained in continuous possession of the same until the 31st day of December, 1859, at which time Hinchman, by proper conveyance, transferred his title to Shumate, the grandfather of these plaintiffs. Soon thereafter, Eliza Jane Ball, the daughter of Shumate, plaintiffs' mother, together with her husband, Augustus Ball, took possession of the lands as

the tenants of Shumate and continued in possession of the same as such until the death of Shumate, which occurred in the year 1866. Shumate, during his lifetime, made a will, by the fourth clause of which he devised the lands in question to his daughter, Eliza Jane Ball, for her natural life and then to her heirs, the present plaintiffs, which clause is in the following language:

"I will and bequeath to my daughter Eliza Jane Ball, during her natural life, and then to her heirs, the plantation which she now lives on, in the county of Boone, West Virginia."

It also appears that, notwithstanding the fact that the said Eliza Jane Ball only had a life estate in the lands, she and her husband, Augustus Ball, conveyed the same in fee simple to Johnson Copley on the 10th day of February, 1868, by way of exchange for other lands in that community. This deed was recorded on the 11th day of February, 1868, and the land transferred on the land books for that year from Parkinson Shumate, in whose name it had been assessed for taxation for the years 1866–67 (there being no tax books for the years 1861–65, inclusive) to Johnson Copley.

It is insisted by counsel for defendant in error that article 13, section 3, of the West Virginia Constitution, which pertains to waste and unappropriated lands, would apply in this instance, and that, inasmuch as Copley held possession of these lands for more than ten years and paid taxes on the same five years, he and those holding under him thereby acquired perfect legal title to the same. We are inclined to think that this provision does not apply to the case at bar; but, be that as it may, it is made perfectly clear by the evidence that Hinchman held possession of these lands for some time, and then, on the 31st day of December, 1859, made a deed to Parkinson Shumate for the same. Immediately thereafter, Ball and wife entered into possession of the premises as tenants of Shumate and remained in continuous possession until the title to the same was transferred to Copley, and Copley and those holding under him continued in possession of the same until the commencement of this action. Thus it will be seen that Parkinson Shumate and those claiming under him held these lands under color of title a sufficient length of time to acquire title to the life estate under the laws of West Virginia, and the heirs at law of Eliza Jane Ball, the plaintiffs below in this action, also thereby became vested with the legal title in fee, independent of any constitutional provision. In other words, the possession of Copley inured to the benefit of the remaindermen, and had the effect of ripening into a perfect legal title that which might otherwise have been an imperfect title. Under the deed from Ball and wife the possession of Copley was adverse to all parties except the remaindermen; but, from the very nature of things, the law will not permit one who holds a life estate to acquire a fee-simple title by possession against the remaindermen, who would become entitled to the possession of the premises at the death of the party holding the life estate. To hold otherwise would be manifestly unjust, inasmuch as a right of action never accrues to remaindermen until the death of the party holding the life estate.

The case of McNeeley v. South Penn Oil Company et al., 52 W. Va.

616, 44 S. E. 508, 62 L. R. A. 562, is very much in point. The first paragraph of the syllabus in that case reads as follows:

"Husband and wife being seised as joint tenants of land, her interest being separate estate, the husband alone, during coverture, sells the whole tract by executory contract, and the purchaser goes into possession during coverture, and later the wife dies, leaving the husband and children surviving her, and later the husband conveys the whole tract to the purchaser by deed. The possession of the purchaser is not adverse to the wife in her lifetime, and right of entry or action does not accrue to her children until the husband's death, and the statute of limitation begins to run against them first at his death."

It is insisted by plaintiffs in error that Augustus Ball never acquired the legal title to the premises in question until subsequent to the conveyance of this land by him to Hinchman; that it was not until he instituted suit in the circuit court of Boone county that he acquired the legal title. In the first place, we think the court below was eminently correct in holding that he acquired nothing by the proceedings in that suit. It should be borne in mind that in that proceeding only the heirs at law of Clendennin were made parties, and not the trustee (Stratton), in whom the legal title was vested if outstanding at that time. It also appears that neither Parkinson Shumate, Eliza Jane Ball, or any of the heirs at law of Eliza Jane Ball were made parties to that suit; and, as was properly held by the court below, any decree entered in that suit, or deeds executed in pursuance thereof, would be "inoperative and of no force or effect against the said Parkinson Shumate or the heirs at law of Eliza Jane Ball."

Augustus Ball certainly acquired the equitable title by the conveyance which he took from Clendennin in the year 1848. The same having passed to him for a valuable consideration (the payment of the debt secured in the trust deed to Stratton), and, he and those claiming under him having gone into possession of the premises from the date of said deed, the possession thus acquired thereby became adverse to the trustee and ultimately ripened into a legal title. But even if he did acquire the legal title in the suit of Augustus Ball against the heirs at law of Richard A. Stratton, deceased, his subsequent conduct in relation to these lands was such as to estop him from denying title of Parkinson Shumate, under whom he and his wife entered as tenants at the time Hinchman executed the deed to Shumate. He not only went into possession of the premises, but it was at his instance that the deed from Hinchman to Shumate was entered for record, as will appear from the following entry which was made at the time such deed was recorded:

"This deed, together with the certificate thereto annexed as acknowledgment, was this day received into this office for record, and at the instance of Augustus Ball the same is admitted."

If Ball really had title to the premises at that time, then was his opportunity to inform Shumate that he was the owner of the same. His failure to do so clearly indicates that at that time he was of opinion that he had no title to this land, and, instead of asserting a claim to the same, he acquiesced in the action of his wife in inducing her father to purchase it to be used as a home for her and her children.

His whole course of conduct shows conclusively that he recog-

nized Parkinson 'Shumate as being the true owner of the land, and having gone into possession of the same as tenant of Shumate, according to the well-settled rule, he was estopped from denying title to Shumate. From the evidence in this case ·it is obvious that Ball had abandoned,·this· tract of land and had ceased to assert any claim whatsoever to the same, and that Parkinson Shumate, being desirous of providing for his daughter, Eliza Jane Ball, purchased it in order that she might have a home during her lifetime and that at her death her heirs should become the owners of this property.

·It also appears that the deed from Ball and wife to Copley, in describing the lands, refers to them as "the same lands Parkinson Shumate devised to Eliza Jane Ball and· heirs," and in the deed from Copley and wife to Ball, which conveyed the land given in exchange, also appears the following provision:

"However, should any part of· the lands taken in exchange for the lands hereby conveyed be recovered by the heirs of the parties of the second part, the lands hereby conveyed shall stand good for this recovery."

This clearly shows that it was not only understood by Ball and wife, but Copley as well, that the estate which Copley took by that deed was only a life estate with a remainder to the heirs at law of Eliza Jane Ball. 'That deed was recorded and was no doubt examined by Copley at .the time the purchase was made; but, be that as it may, the fact that such deed was registered had. the effect in law to fix Copley, who was in privity with Ball and wife, with notice of the contents of the will by which the title to this land was transmitted to Mrs. Ball for her natural life and at her death in fee simple to her heirs. Therefore, in any event, the plaintiffs would be entitled to recover the lands in question.

We now come to consider the other assignments of error. Among other things it is assigned as error that the trial court admitted in evidence an inadmissible copy of the Shumate will over the objection of the defendant.

It was incumbent upon the plaintiff to produce to the court either the original or a· duly authenticated copy of the will. It appears that two copies of the will were introduced, to wit: One from the record of wills. of Boone county and one from the record of wills from Mercer county. The copy of the will from the Boone county records will first be considered. When the plaintiffs offered a copy of the will from Mercer county, it was objected to on the ground that it had not been probated. in West Virginia. The court overruled the objection on the statement. of counsel for plaintiffs that proof of the probate of the will in Mercer county would be introduced later. The offer of the Boone county copy was apparently made in lieu of the literal fulfillment of this promise. It was offered "simply to show that the will was recorded in Boone county" in 1864—whatever this may mean. There was an objection by defendants, which was overruled, an exception noted, and the first assignment of error ·is that there is no certificate to the copy of the will showing that the will had ever been duly or· legally probated in West Virginia.

. The statute (Act Feb. 22, 1883, Acts W. Va. 1883; p. 82, c. 55) gives

the county court clerk power to admit wills to probate only "during the recess of the regular sessions of said courts," and his order must be affirmed by the county court. It appears from the face of the Boone county certificate that the will was admitted to probate in the clerk's office. Whether it was done during the recess of the court or not does not appear. While the clerk is given by the statute at least preliminary judicial powers, and he is to be regarded as a court, in admitting wills to probate, it is settled in the federal courts that presumptions cannot be used in support of the jurisdiction of courts of special and limited powers. Walker v. Turner, 9 Wheat. 541, 548, 6 L. Ed. 155; Ex parte Wood, 9 Wheat. 603, 606, 6 L. Ed. 171; Miller v. U. S., 11 Wall. 268, 299, 20 L. Ed. 135; Galpin v. Page, 18 Wall. 350, 366, 21 L. Ed. 959. See, also, 1 Black, Judgments (2d Ed.) pp. 431, 434.

It seems clear that the power of the clerk to admit wills to probate is special and limited and such as exists only under the specified circumstance that the court be in vacation. It follows that the jurisdiction of the clerk to admit the will to probate must affirmatively appear. As there was no evidence of such fact, the Boone county copy cannot be treated as admissible evidence.

Turning now to the copy of the will from Mercer county, W. Va., the record reads:

"Mr. Thompson: We object to the will.

"Court: On what ground?

"Mr. Thompson: It doesn't seem ever to have been probated in this state. (Here follows argument of counsel.)

"Upon the statement of counsel for the plaintiffs that proof of the probate of said will in Mercer county, W. Va., would be later introduced, the court overrules the objection of the defendants to the introduction of said will, to which action of the court in overruling said objection the defendants, by counsel, at the time excepted.

"Here said will, being 'Plaintiffs' Exhibit A,' is read to the jury, being in the words and figures following."

No further evidence of probate in Mercer county was ever offered. The record shows that, on rebuttal, the following occurred (Mr. Byrne being counsel for the plaintiffs, and Mr. Thompson for the defendants):

"Mr. Byrne: Your honor, we desire to offer the copy of the will which was heretofore offered with the certificate of its recordation in the county of Boone, to show simply that the paper was recorded in Boone county, on the 15th of February, 1884, marked 'Plaintiffs' Exhibit Aa.'

"Court: Well, perhaps that might be admitted that it was recorded.

"Mr. Thompson: We will admit that this paper was spread on the records in Boone in February, 1884; that it was spread upon the will book, or whatever book it says it was.

"Mr. Leftwich: That's where it was, the will book.

"Mr. Byrne: We offer it as recorded paper.

"Mr. Thompson: Well, we will object to it and let the court say.

"Court: If you desire to offer it simply to show that the will was recorded there, I will admit it over the objection of counsel for the defendants.

"Mr. Thompson: Save an exception."

Clearly the Mercer county copy was admitted in evidence conditionally, on an avowal that evidence showing the will to have been duly probated in Mercer county in 1866 would subsequently be introduced. Evidently counsel for plaintiffs abandoned this intention and sought to

rely solely on the Boone county copy. But if in fact the Mercer county copy was admissible, it would seem that the judgment below should not be reversed. Appellate courts do not sit to reverse for error merely, but only for prejudicial error. The error in admitting the Boone county copy of the will was not prejudicial to the defendants below if in fact the Mercer county copy was admissible.

The validity of the probate in Mercer county must therefore be now considered.

Without attempting to quote the law in force in West Virginia on October 9, 1866, it seems sufficient to say that under the West Virginia Constitution of 1861–63 (article 7, §§ 5 and 6) and Acts 1863 (pp. 35, 36, c. 36, embodied in Code 1868, pp. 587–588, 589, c. 118) the county recorder was given the power of a court of probate. No clearly jurisdictional limitation on his powers is expressed except that:

"Recorders may make all orders and do all things required to be done * * * in their respective offices, on any day, Sundays and holidays excepted."

The certificate of the recorder of Mercer county shows that he admitted the copy of the will from the court of Giles county, Va., to record on October 9, 1866. Upon reference to the calendar it appears that that day was Tuesday. The First of January, Christmas, and July 4th were at that date the only legal holidays in West Virginia (Code W. Va. 1868, p. 536, c. 99, § 4).

The point most relied upon by plaintiffs in error is founded upon this provision:

"Where a will relative to estate within this state has been proved without the same, an authenticated copy thereof, and the certificate of probate thereof, may be offered for probate in this state. When such copy is so offered, the recorder to whom it is offered shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personalty in the state or county of the testator's domicile, and shall admit such copy to probate as a will of personalty in this state. And if it appear from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of lands in this state by the law thereof, such copy may be admitted to probate as a will of real estate."

The contention is that the will and certificate of probate in Virginia do not show that the will was so executed as to be a valid will of lands in West Virginia. Granting this, the question remains whether or not the above-quoted statute is a jurisdictional limitation of the powers of the recorder, such as can be relied upon collaterally. The recorder is by the Acts of 1863 (section 5, c. 118, Code 1868) given the following powers:

"The recorder of each county shall have power, and it shall be his duty (except on Sundays and holidays), to receive acknowledgment or proof of, admit to record * * * and certify * * * wills * * * to hear proof of, and admit wills and authenticated copies thereof to probate. * * *"

Following section 5 above quoted as to admitting to probate copies of wills proved in other states or counties is a provision whereby the recorder may issue commissions for taking the depositions of attesting witnesses residing out of the state of West Virginia. Later provisions of the statute allow persons interested, within the time limited, to ap-

peal to the circuit court from "any order made by the recorder in relation to the probate of a will." It is evident that when a copy of a will probated in some other state was offered for probate in West Virginia the recorder was charged with the duty—clearly judicial in nature—of determining whether or not the will and the certificate of probate in the foreign state showed that the will had been so executed as to be a valid will of lands in West Virginia.

In McNitt v. Turner, 16 Wall. 352, 366, 21 L. Ed. 341, it is said:

"Jurisdiction is authority to hear and determine. It is an axiomatic proposition that, when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding being coram judice, can be impeached collaterally only for fraud."

See, also, Vorhees v. Bank, 10 Pet. 449, 9 L. Ed. 490; Grignon v. Astor, 2 How. 341, 11 L. Ed. 283; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054.

In the case at bar, the recorder had authority to inspect and determine, that is he had "jurisdiction." And if in his determination, to use the language in Grignon v. Astor, supra, "there was error of the most palpable kind," or if he "disregarded, misconstrued, or disobeyed the plain provisions of the law," yet his determination is not subject to collateral attack. And this rule applies to judgments by limited and special tribunals (if their jurisdiction affirmatively appears) as fully as to judgments of courts of general jurisdiction. Secombe v. Railroad Co., 23 Wall. 108, 119, 23 L. Ed. 67; Railroad Co. v. Backus, 154 U. S. 421, 435, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

From the certificate made by the recorder of Mercer county it appears that he admitted the will "to record." This is the established form, and means that the will, or copy, as may be the case, has been probated or admitted to probate. See Minor's Insts. (4th Ed.) p. 1035. This admission also is general and is an admission to probate and record as a will of lands.

The certificate by the recorder concludes:

"Certificate is granted them (the executors) for obtaining a probate of said will in due form."

It is sufficient for the purposes of this case to say that this formula does not justify a belief that something else remained to be done in order to probate the copy of the will from Virginia, or to make a certified copy from the Mercer county record admissible in evidence.

In Smith v. Henning, 10 W. Va. 596, 613, 614, will be found a certificate of probate where the will was proved in solemn form, per testes, before the county court of Bedford county, Va., which concludes exactly as does the certificate under consideration. The form which the recorder was intending to follow reads, when correctly written:

"Certificate is granted them for obtaining letters of probate of said will in due form." 2 Minor, 1035, note; Bouv. Dict. "Letters Testamentary."

It follows that the Mercer county copy of the Shumate will was admissible in evidence, and that this copy proved the essential facts that the plaintiffs were the successors in interest of Shumate, and that they took under his will the remainder in fee simple after the death of Eliza Jane Ball. See Code Va. 1860, p. 559, c. 116, § 11.

It also follows that none of the remaining assignments of error, except as to the court's action in allowing a remittitur, need be discussed. If it be assumed that the chancery suit of Ball against Clendennin's heirs and the commissioner's deed put the legal title in the defendants, still they were estopped to assert such title as against Shumate's successors in interest. And any error in the instructions in this respect was harmless. Again, if the trial court erred in instructing the jury that Copley had constructive notice that Shumate's will vested only a life estate in Mrs. Ball and the remainder in fee in her children, such instruction was harmless. The Mercer county copy of the will legally proved the fact.

The assignment based on the fact that the trial court refused to set aside the verdict and grant a new trial is mentioned only to say that the action of the trial court in this respect is not reviewable.

The action of the trial court in allowing the plaintiffs to remit the verdict for lands not covered by their title was clearly right. See Tennant v. Gray, 5 Munf. (Va.) 494; Preston v. Bowen, 6 Munf. (Va.) 271; Gibson v. Stewart, 11 Leigh, 600; Williams v. Railroad Co., 9 W. Va. 33, 40; Railroad Co. v. Blake, 38 W. Va. 718, 18 S. E. 957; Kennon v. Gilmer, 131 U. S. 22, 29, 9 Sup. Ct. 696, 33 L. Ed. 110; Hansen v. Boyd, 161 U. S. 397, 411, 16 Sup. Ct. 571, 40 L. Ed. 746.

We have considered the remaining assignments of error and are of opinion that they are without merit.

For the reasons hereinbefore stated, the judgment of the court below is affirmed.

Affirmed.

McDOWELL, District Judge, concurs in the conclusion reached.