### NUSSBAUM et al. v. NUSSBAUM et al.*
(No. 8431.)

(Court of Civil Appeals of Texas. Galveston. Feb. 27, 1924. Rehearing Denied March 27, 1924.)

**1. Life estates ⬉8—Possession of life tenant held possession of remaindermen.**

Continuous peaceable possession and holding of life tenant *held* possession of remaindermen, as against plaintiffs owning an undivided half interest, sufficient to perfect title in remaindermen under five-year limitations.

**2. Adverse possession ⬉112—One asserting limitation must prove every fact necessary to sustain plea.**

One asserting limitation in bar of another's right to recover property must prove every fact necessary to sustain plea.

**3. Limitation of actions ⬉103(2)—Trusts ⬉365(3)—Equitable title under express trust not barred before trustee's repudiation of trust.**

Equitable title of beneficiaries under express trust does not become barred so long as trustee does no act amounting to repudiation of trust.

**4. Trusts ⬉365(3)—Lapse of time does not bar rights of beneficiary under admitted resulting trust without repudiation made known to him.**

Where a resulting trust is admitted and is not thereafter repudiated by the trustee by word or some act showing repudiation brought to the knowledge of the beneficiary, no lapse of time affects the latter's rights.

**5. Limitation of actions ⬉103(4)—Trusts ⬉365(3)—When rule of limitation applicable against beneficiary of express trust applies to beneficiary of constructive trust.**

When an outstanding equity exists in land by reason of a constructive trust, and its existence is recognized by the holder of the legal title, some subsequent hostile act of the latter is necessary to put the equitable owner upon action to vindicate his right, and under such circumstances the position of the equitable owner in respect to limitation and stale demand is governed by the same rule applicable to express trusts.

**6. Appeal and error ⬉1064(1)—Limitation of actions ⬉195(3)—Trusts ⬉372(1)—Under plea of limitations and laches instruction placing burden on plaintiffs to show lack of knowledge of repudiation of trusts five years before commencing suit held reversible error.**

In suit to recover undivided half interest in land held in trust by defendant father and his deceased wife, in which defendants pleaded five-year statute of limitation and stale demand, the burden was on defendants to show that plaintiffs had notice five years before suit that defendant father and his wife repudiated the trust, and instruction placing that burden on plaintiffs was reversible error.

Appeal from District Court, Harris County; Sam R. Merrill, Special Judge.

Suit by S. J. Nussbaum and another against P. S. Nussbaum and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Carothers & Brown, of Houston, for appellants.

Love, Wagner & Wagner, of Houston, for appellees.

LANE, J. This is a suit in trespass to try title brought by S. J. Nussbaum and M. P. Nussbaum, the sons and only children of P. S. Nussbaum by his first wife, against their father, P. S. Nussbaum, and against Joe Blumenthal, Bertha Augusta Blumenthal, Henry Nussbaum and wife, Sarah Nussbaum, Mollie Saper and husband, S. Saper, who will hereinafter be called and referred to as the children of Augusta Nussbaum, the second wife of P. S. Nussbaum, to recover an undivided one-half of lots 4 and 5, in block 126, in Houston, Tex., and for partition of same. The defendants pleaded not guilty, and the two, three, four, five, and ten year statutes of limitation, and stale demand.

Plaintiffs S. J. Nussbaum and M. P. Nussbaum, as before said, were the children of the first wife of the defendant, P. S. Nussbaum, and the only children who survived her. The defendants, except P. S. Nussbaum, are the children and grandchildren of Augusta Nussbaum, deceased, the second wife of P. S. Nussbaum. ·

The lots involved were conveyed by one John McGill and wife to Augusta Nussbaum, the second wife of P. S. Nussbaum, on the 24th day of May, 1871, by deed duly filed for record May 29, 1871. The purchase money paid to McGill for the property was the community property of P. S. Nussbaum and his first wife and was paid to McGill by P. S. Nussbaum.

---

After the purchase of this property, P. S. Nussbaum and wife, Augusta, and S. J. and M. P. Nussbaum, sons of the first wife, then about nine and twelve years of age, respectively, moved upon the property. Valuable improvements were made on said property by P. S. and Augusta Nussbaum after said purchase.

After the conveyance of the property by McGill to Mrs. Augusta Nussbaum, P. S. Nussbaum, during the lifetime of Mrs. Augusta Nussbaum, gave the plaintiffs, S. J. and M. P. Nussbaum, to understand that they had a one-half interest in the property, which he recognized as owned by them, and Mrs. Augusta Nussbaum by her acts and conduct gave said plaintiffs to understand that she acquiesced in such recognition of ownership.

Mrs. Augusta Nussbaum died on the 11th day of October, 1902, while still living with her husband on the property in question, and left a will which was duly probated, by which she bequeathed to her husband, P. S. Nussbaum, a life estate in the property in question and devised the remainder to her children.

On the 26th day of September, 1902, only a short time prior to the death of Mrs. Nussbaum, P. S. Nussbaum executed a deed purporting to convey to Mrs. Nussbaum the property in question, which was duly recorded December 11, 1902. It was recited in this deed that the consideration recited therein was paid out of the separate funds of Augusta C. Nussbaum, and that it was the intention of the parties thereto to make the property her separate estate.

Neither of the plaintiffs learned that their stepmother, Augusta Nussbaum, had left a will devising the property to P. S. Nussbaum for the term of his life, with remainder to her children, within ten years prior to the filing of this suit, nor did either of them know of the execution of the deed of September 26, 1902, within ten years prior to the filing of said suit.

After the death of Mrs. Augusta Nussbaum, P. S. Nussbaum remained in peaceable possession of the property, under the will of Mrs. Nussbaum, and has at all times since said time so held said property, claiming a life estate therein, and has used and enjoyed the same and paid all taxes thereon for five years continuously between January 8, 1903, the date of the probate of said will, and the 10th day of February, 1915, the date on which this suit was filed.

Neither of the plaintiffs had knowledge of facts which would reasonably lead to a discovery of the existence of the will of Mrs. Nussbaum, or the deed of September 26, 1902, within ten years prior to the filing of this suit.

The facts above stated are shown by the undisputed evidence, or by the findings of the jury upon sufficient evidence to support such findings.

The only controverted issues of fact to be considered by us are as to whether (1) the plaintiffs learned, at any time five years before this suit was filed, that Mrs. Augusta Nussbaum left a will devising the property in controversy to her children, and (2) whether they knew of the deed from P. S. Nussbaum of date September 26, 1902, at any time more than five years before this suit was filed.

As to the controverted facts last mentioned, the court submitted to the jury selected to try the cause special issues as follows:

"Special issue No. 6. Did M. P. Nussbaum learn prior to February 10, 1910, that his stepmother, Augusta C. Nussbaum, had left a will devising the property in controversy to Mrs. Mollie Saper, Henry Nussbaum, and Bertha Blumenthal?"

"Special Issue No. 6. Did S. J. Nussbaum learn prior to February 10, 1910, that his stepmother, Augusta C. Nussbaum, had left a will devising the property in controversy to Mrs. Mollie Saper, Henry Nussbaum and Bertha Blumenthal?"

"Special Issue No. 10. Did M. P. Nussbaum know of the deed from P. S. Nussbaum to his stepmother, Mrs. Augusta C. Nussbaum, conveying the property in controversy and bearing date September 26, 1902, prior to February 10, 1910?"

"Special Issue No. 12. Did S. J. Nussbaum know of the deed from P. S. Nussbaum to his stepmother, Mrs. Augusta Nussbaum, conveying the property in controversy, bearing date September 26, 1902, prior to February 10, 1910?"

Relative to these issues the court instructed the jury that the burden of proof was upon the plaintiffs, S. J. and M. P. Nussbaum, to establish by a preponderance of the evidence the negative of such issues, and that if they should find that the plaintiffs had failed to so establish the negative of such issues, or either of them, then and in that event they should answer such issue or issues in the affirmative.

Under such instructions and in answer to such special issues the jury found that the plaintiff did know of the existence of the will and deed inquired about before February 10, 1910, or more than five years before the 10th day of February, 1915, the day on which this suit was filed.

Upon the findings of the jury and the other facts stated, the court rendered judgment decreeing that the plaintiffs take nothing by their suit. From such judgment S. J. and M. P. Nussbaum have appealed.

It is apparent, we think, that the trial court based its judgment alone upon the answers of the jury to special issues 6, 8, 10, and 12 to the effect that the plaintiffs learned, prior to February 10, 1910, that their stepmother had left a will devising the prop-

erty in controversy to her children and that they had also known, prior to said date, of the deed from their father, P. S. Nussbaum, to their stepmother, of date September 26, 1902, the effect of which was to find that the plaintiffs had learned of such acts of P. S. and Augusta Nussbaum more than five years before they filed their suit in February 10, 1915, which informed them that said parties were holding adverse to them. We shall therefore consider the assignments upon the assumption that said judgment was so based.

While appellants have submitted 55 assignments of error and 19 propositions thereunder, we think an answer to but 2 questions will dispose of all the material issues presented by this appeal, which are:

[1] (1) Conceding that appellants, M. P. and S. J. Nussbaum, learned of the existence of the will of Augusta C. Nussbaum, by which she devised a life estate in the property in controversy to P. S. Nussbaum, with remainder to her children, the appellees, more than five years prior to the institution of this suit, and that they also learned of the existence of the deed from P. S. Nussbaum to Augusta C. Nussbaum, of date September 26, 1902, more than five years prior to the institution of such suit, was the continuous peaceable possession and holding of P. S. Nussbaum, the life tenant, such peaceable possession and holding for appellees, the remaindermen, as against appellants, as would perfect title in appellees by the five years statute of limitation?

(2) Did the court err in instructing the jury that the burden of proof was upon the plaintiffs to establish by a preponderance of the evidence that they did not learn, prior to the 10th day of February, 1910, of the existence of the will of Augusta C. Nussbaum, or the deed from P. S. Nussbaum to Augusta C. Nussbaum?

While we have not been able to find any Texas decisions passing on the question, yet we think that sound reason and weight of authority of other jurisdictions compels an affirmative answer to the first question. It is shown that P. S. Nussbaum took and held possession of the premises as a life tenant under the will of Mrs. Augusta C. Nussbaum, and that he has at all times since taking possession held subject to the rights of the remaindermen. It is, well, settled that the possession of a tenant for a term of years is a possession of his landlord; or, in other words, that the tenant is holding under his landlord and adversely to the world, except as to his landlord. We can conceive of no sound reason why a different rule should be applied to a tenant for life and a tenant for a term only. It has been held by a Circuit Court of Appeals, as well as by some state courts, that the possession of the life tenant inures to the benefit of the remaindermen, and that such possession has the effect of

ripening into a perfect legal title that which might otherwise have been an imperfect title. Copley v. Ball, 176 Fed. 682, 100 C. C. A. 234; Staton v. Mullis, 92 N. C. 623; Osborne v. Anderson, 89 N. C. 261; Anderson v. Rhodus, 12 Rich. Eq. (S. C.) 104; Hickman v. Link (Mo. Sup.) 7 S. W. 12, 21 Corpus Juris, § 123, p. 975.

In the section of Corpus Juris cited, this rule is stated:

"The possession of the life tenant may be adverse as against third persons so as to create a valid title by adverse possession in favor of the life tenant, and the remainderman or reversioner."

To support the rule announced the cases above mentioned are cited.

In Hickman v. Link, supra, in speaking of Mrs. McCourtney, a widow, the court said:

"She was entitled to her quarantine in the whole plantation until dower was assigned, which it seems was never done. Her possession was not adverse to the heirs. * * * But it evidently was adverse to all the world, except the heirs."

In accordance with the views above expressed we answer the first question in the affirmative.

We now return to a consideration of the second question: Did the court err in instructing the jury that the burden was upon appellants to prove by a preponderance of the evidence that they had no notice, more than five years before this suit was filed, that P. S. Nussbaum or Mrs. Augusta Nussbaum had repudiated the trust which they advised appellants existed in their favor?

The jury found upon sufficient evidence that the property in controversy was paid for with funds in the hands of appellants' father, P. S. Nussbaum, one-half of which belonged to them and which was held by P. S. Nussbaum for them, and that P. S. Nussbaum and Mrs. Augusta Nussbaum recognized that appellants owned one-half of the property and that they told appellants that they recognized their ownership in one-half thereof, and that they would get their part of the same. Appellants testified, substantially, that after such statements had been made they intended to permit their father to retain possession of the property during his life, and that they had no notice of any act on the part of either P. S. Nussbaum or Mrs. Augusta C. Nussbaum tending to show that they, or either of them, had repudiated such stated recognition of appellants' rights in the property until about two years before filing this suit. Appellants alleged that they were the owners of one-half of the property, and prayed for judgment therefor and for a partition thereof.

Appellees plead the five years' statute of limitation in bar of appellants' right to recover.

[2] Assuming, as we must from the facts found by the jury, that one-half of the property was owned by appellants and that same was held by P. S. Nussbaum and Augusta C. Nussbaum in trust for them, we think the burden rested upon appellees to prove such facts as would establish their plea of limitation in bar of appellants' right to recover. One asserting limitation must prove every fact necessary to sustain the plea. Barnet v. Houston, 18 Tex. Civ. App. 134, 44 S. W. 689; Clark v. Hills, 67 Tex. 149, 2 S. W. 356; City of Fort Worth v. Rosen (Tex. Com. App.) 228 S. W. 149; Hooks v. Martin (Tex. Civ. App.) 229 S. W. 592.

It being shown that appellants owned one-half of the property and that P. S. Nussbaum and wife, Augusta C. Nussbaum, had agreed to hold said one-half in trust for them, P. S. Nussbaum became a tenant at will of appellants, and the burden was upon appellee to show that P. S. Nussbaum had repudiated such tenancy and trust five years before appellants filed this suit, and that notice of such repudiation had been in some way brought to the knowledge of appellants five years before they filed this suit, to enable appellees to recover under their plea of limitation.

[3, 4] Where one holds title for another by an express trust, the equitable title does not become barred so long as the trustee does no act amounting to a repudiation of it, and in cases of resulting trusts, such as in the present case, where the trust is admitted and is not thereafter repudiated by the trustee by word or some act showing repudiation brought to the knowledge of the beneficiary, no lapse of time affects the cestui que trust.

[5] In constructive trusts, which presupposes an adverse right from the beginning in the trustee, limitation will run from the time the beneficiary could have vindicated his right by action or otherwise; but even in such cases the trustee must bring himself clearly within the position of a continued and consistent adverse claimant, and the cestui que trust must have no reasonable excuse for failing to prosecute his claim within the proper time. In other words, we understand that when such outstanding equity exists, and its existence is recognized or admitted by the holder of the legal title, it requires some subsequent hostile act on the part of the latter in order to put the equitable owner upon action, and under such circumstances his position in respect to limitation and stale demand is governed by the same rule that applies to express trusts.

Since P. S. Nussbaum and wife, Augusta C. Nussbaum, had admitted that they held the one-half of the property in trust for appellants, it was incumbent upon appellees to show that appellants had in some way been given notice, five years before they filed this suit, that the trust had been repudiated before they were entitled to a recovery under their plea of limitation of five years. Wilson v. Simpson, 80 Tex. 287, 16 S. W. 40; Cole v. Noble, 63 Tex. 434.

[6] The fact that P. S. Nussbaum, the father of appellants, and Mrs. Augusta C. Nussbaum, their stepmother, told appellants that they recognized their rights in the property and that they would get their part, was calculated to lull appellants into the belief that said parties recognized their rights in the property up to within two or three years next before this suit was filed, at which time they learned of the will and deed hereinbefore mentioned. In such circumstances, we again repeat, we think the burden of proof was upon appellees to show by a preponderance of the evidence that appellants had in some manner had notice that P. S. Nussbaum was repudiating the promise of himself and wife to recognize their rights in the property and not upon appellants, as the jury was instructed by the charge complained of.

Having reached the conclusion that the court erred in the particular pointed out and that such error probably worked injury to appellants, it becomes our duty to reverse the judgment and remand the cause; and it is so ordered.

Reversed and remanded.